HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Roger Leishman,

        Plaintiff,

      v.

Washington Attorney General's Office *et al.*,

        Defendants.

Case No.  2:20-cv-00861-RAJ

**ORDER**

## I.   INTRODUCTION

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Dkt. # 26) and Defendants' Motion to Temporarily Stay Discovery (Dkt. # 49).  Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary.  For the reasons below, Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**, and Defendants' motion to stay discovery is **DENIED as moot**.

## II.   BACKGROUND

Plaintiff Roger Leishman used to work at the Washington Attorney General's Office.  Dkt. # 11 ¶ 23.  He was hired on July 14, 2015 as a chief legal advisor to Western Washington University.  *Id.*  This case is about a disability accommodation request and a

ORDER – 1

sexual orientation complaint that he made while he was employed there.

After starting work, Mr. Leishman "began exhibiting serious trichotillomania, anxiety, and other symptoms," which he disclosed to the Attorney General's Office. *Id.* ¶ 25. Shortly thereafter he was diagnosed with Post Traumatic Stress Disorder and serious codependency. *Id.* ¶¶ 25, 27. On February 22, 2016, he submitted a disability accommodation request. *Id.* ¶ 28. About a week later, on March 1, 2016, Defendant Elizabeth Christina Beusch, a deputy attorney general, denied that request. *Id.* ¶ 29.

Unrelated to his disability accommodation request, Mr. Leishman submitted a formal sexual orientation complaint on March 2, 2016 against the Attorney General's Office. *Id.* ¶ 32. In the complaint, Mr. Leishman alleged that the Attorney General's Office discriminated against him the year before on the basis of his sexual orientation when his immediate supervisor took an adverse employment action against him. *Id.* ¶¶ 31-33. He alleged that his supervisor made "homophobic allegations" against him, which ultimately resulted in "giving $3,000 raises to every Assistant Attorney General except Leishman in October 2015," all while depriving Mr. Leishman a chance to respond to his supervisor's allegations. *Id.*

On March 7, 2016, just days after Defendant Beusch denied Mr. Leishman's disability accommodation request and just days after Mr. Leishman submitted his sexual orientation discrimination complaint, Mr. Leishman was placed on immediate home assignment. *Id.* ¶¶ 38-39.

About a week later, the Attorney General's Office informed Mr. Leishman that it had appointed an independent outside investigator to investigate Mr. Leishman's sexual orientation discrimination complaint. *Id.* ¶ 44. The investigator was Patrick Pearce, a member of the Seattle law firm Ogden Murphy Wallace PLLC ("OMW"). *Id.* ¶¶ 34, 44. The Attorney General's Office also informed Mr. Leishman that OMW's investigation was limited to his sexual orientation discrimination complaint. *Id.* ¶ 46. In their communications, Mr. Leishman and Mr. Pearce both agreed that the scope of the OMW

ORDER – 2

investigation was so limited.  *Id.* ¶¶ 48, 50.

Mr. Leishman later learned that was not the case.  *Id.* ¶ 61.  Before the investigation began, the Attorney General's Office "secretly expanded" the scope of the investigation beyond just sexual orientation discrimination issues.  *Id.*  On March 11, 2016, days before Mr. Leishman was informed of the OMW investigation, chief deputy attorney general Defendant Shane Esquibel "directed Pearce to investigate a second issue with no connection to Leishman's complaint of employer discrimination on the basis of sexual orientation."  *Id.* ¶ 67.  The second issue was "separate secret complaints" from Mr. Leishman's supervisors about his workplace conduct.  *Id.*  Mr. Leishman was not informed that the scope of the OMW investigation had been expanded to include any issue other than sexual orientation discrimination.  *Id.* ¶ 76.

On April 29, 2016 Mr. Pearce provided his final investigation report ("OMW Report") to the Attorney General's Office.  *Id.* ¶ 83.  On May 9, 2016, representatives of the Attorney General's Office gave Mr. Leishman copies of the OMW Report and a letter terminating his employment.  *Id.* ¶ 103.  According to the report, the OMW investigation involved "two issues": "A) whether Assistant Attorney General Roger Leishman experienced discrimination based on his sexual orientation; and B) whether Mr. Leishman conducted himself appropriately in a March 1, 2016 meeting in his office with his supervisor."  *Id.* ¶ 87.  March 1, 2016 was the day that Defendant Beusch denied Mr. Leishman's disability accommodation request.  *Id.* ¶ 29.

Later that year, on October 18, 2016, Mr. Leishman entered a settlement agreement with the "State of Washington and its officers, agents, employees, agencies, and departments."  *Id.* ¶¶ 109-14; Dkt. # 26-1 at 5-7.  Under that agreement, he agreed to "release and forever discharge" the State of Washington "from any and all existing and future claims, damages, and causes of action of any nature whatsoever arising out of occurrences, or events described in his claim for damages filed."  Dkt. # 26-1 at 5.

The following year, on May 10, 2017, Mr. Leishman sued OMW and Mr. Pearce

ORDER – 3

in state court.  Dkt. # 11 ¶ 115.  Through discovery in that action, Mr. Leishman learned of Defendant Esquibel's "secret expansion" of the OMW investigation.  *Id.* ¶¶ 122-24. He also learned that Defendant Kari Hanson, an assistant attorney general, was also involved.  *Id.*

This prompted Mr. Leishman to file grievances with the Washington State Bar Association against Defendant Esquibel and Defendant Hanson.  *Id.* ¶¶ 125-28.  It also prompted Mr. Leishman to file a complaint with the Executive Ethics Board against Defendant Esquibel and Defendant Hanson, as well as assistant attorneys general Defendant Allyson Janay Ferguson and Defendant Suzanne LiaBraaten.  *Id.* ¶¶ 131-34. When executive director of the Washington Executive Ethics Board Defendant Kate Reynolds refused to accept Mr. Leishman's complaints, he filed a Writ of Mandamus in state court ordering Defendant Reynolds "to do her job."  *Id.* ¶ 136.

On April 24, 2020, Mr. Leishman filed this action in King County Superior Court. Dkt. # 1-2.  Weeks later, it was removed to this Court.  Dkt. # 1.  Mr. Leishman then amended his complaint ("Amended Complaint").  Dkt. # 11.  In his Amended Complaint, he asserts 11 causes of action, four of which are pleaded in the alternative.  *Id.*  He is suing a host of Defendants: the Attorney General's Office ("AGO") as a state agency; individuals from the Attorney General's Office and their spouses (i.e., Defendant Shane Esquibel, Defendant Noah Purcell, Defendant Elizabeth Christina Beusch, Defendant Paige Dietrich, Defendant Allyson Janay Ferguson, Defendant Kari Hanson, Defendant Suzanne LiaBraaten, Defendant Valerie Petrie, Michael James Shinn); Defendant Kathryn Nadine Reynolds from the Washington Executive Ethics Board and her spouse; the Office of Risk Management as a state agency; the Western Washington University ("WWU"); and finally Defendant Bruce Shepard the former president of WWU.  *Id.* ¶¶ 3-18.

On July 22, 2020, all Defendants moved to dismiss.  Dkt. # 26.  The motion is now ripe for review.

ORDER – 4

## III.   LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for failure to state a claim.  The court must assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations.  *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).  The court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Instead, the plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007).  If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief.  *Id*. at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On a motion to dismiss, a court typically considers only the contents of the complaint.  However, a court is permitted to take judicial notice of facts that are incorporated by reference in the complaint.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials documents attached to the complaint, documents incorporated by reference in the complaint."); *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) ("[I]t is proper for the district court to 'take judicial notice of matters of public record outside the pleadings' and consider them for purposes of the motion to dismiss.") (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)).

## IV.   DISCUSSION

According to Defendants, their motion to dismiss "is not about the merit of Mr. Leishman's claims."  Dkt. # 30 at 1.  Rather, it is "primarily about the serious pleading errors in the Amended Complaint."  *Id.*  The motion attacks the Amended Complaint on several grounds.  Some attacks are aimed at Mr. Leishman's pre-filing deficiencies or failure to properly serve several Defendants.  Others assert defenses such as waiver under

ORDER – 5

1    a settlement agreement, qualified immunity, and expiration of the statute of limitations.

2    The rest attack Mr. Leishman's allegations under Rules 8 and 9(b) of the Federal Rules of

3    Civil Procedure.  The Court addresses each argument in turn but must first address the

4    parties' reliance on extrinsic evidence.

5         **A.    Extrinsic Evidence**

6         In ruling on a Rule 12(b)(6) motion, a court may not consider any material beyond

7    the pleadings.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  If it does, it

8    must normally convert the motion to dismiss into one for summary judgment under Rule

9    56.  *Ritchie*, 342 F.3d at 907 (9th Cir. 2003); *see also* Fed. R. Civ. P. 12(d).  Further,

10   "[a]ll parties must be given a reasonable opportunity to present all the material that is

11   pertinent to the motion."  Fed. R. Civ. P. 12(d).  That said, a court may consider certain

12   extrinsic materials, such as documents incorporated by reference into a complaint or

13   matters of judicial notice, without making such a conversion.  *Ritchie*, 342 F.3d at 907.

14        Both parties rely on extrinsic evidence.  Attached to each of their briefs are

15   declarations with several exhibits.  Dkt. ## 26-1, 29.  For their part, Defendants attach a

16   2016 Settlement Agreement which they say is incorporated by reference in the Amended

17   Complaint.  Dkt. # 26 at 4.  And they also request that the Court consider court

18   documents filed in Mr. Leishman's state court case.  *Id.*  Mr. Leishman submits a

19   declaration of his own, containing 128 paragraphs' worth of testimony and 32 exhibits.

20   Dkt. # 29.  In reply, Defendants ask the Court to strike portions of Mr. Leishman's

21   declaration, attached exhibits, and "those portions of the Response that rely on them."

22   Dkt. # 30 at 4-5.

23        The Court will not convert this motion to dismiss into one for summary judgment.

24   Neither party asks the Court to so convert the motion.  Even if they did, neither has been

25   "given a reasonable opportunity to present all the material that is pertinent to the motion."

26   Fed. R. Civ. P. 12(d).  Except as explained below, the Court will not consider the parties'

27   extrinsic evidence.  And because the Court does not rely on Mr. Leishman's declaration

28   ORDER – 6

or exhibits, it need not strike the declaration at this time.

## B.   Service of Summons

Defendants argue that certain Defendants (Defendants Purcell, Beusch, Dietrich, Ferguson, Hanson, LiaBraaten, Petrie, Shinn, Reynolds and the Office of Risk Management) have not been properly served.  Dkt. # 26 at 22-23; *see also* Dkt. # 26-1 ¶ 2.  Yet, on September 2, 2020, weeks after Defendants made that argument, each previously-unserved Defendant waived service of summons.  Dkt. ## 32-41.  This issue is now moot.

## C.   Washington Tort Claim Act Form

### i.   Errata

In its opening brief, Defendants argued that Mr. Leishman failed to comply with the Washington Tort Claims Act because he did not file the "standard tort claim form" required by statute before bringing suit.  Dkt. # 26 at 11-12.  This, they said, was grounds for dismissal.  *Id.*  Soon after, they filed an errata correcting a misstatement in their brief.  Dkt. # 27.  According to Defendants, attached as Exhibit 4 to the Amended Complaint is in fact "a re-formatted version of a Tort Claim form Mr. Leishman submitted electronically on February 18, 2020."  *Id.*  But they did not abandon their argument.  In reply, they argue although Mr. Leishman filed an online tort claim form against Defendant AGO, Defendant WWU, and Defendant Shepard, he has failed "to present a tort claim against any of the newly added individual defendants or ORM."  Dkt. # 30 at 9.

### ii.   Incorporation-by-Reference

"[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *Ritchie*, 342 F.3d at 907-08.  This prevents plaintiffs from selecting

ORDER – 7

only beneficial portions of documents, while omitting harmful portions. *Khoja*, 899 F.3d at 1002.

Attached to Defendants' errata is a true copy of Mr. Leishman's online tort claim form. Dkt. # 27. The Court incorporates it by reference. The Amended Complaint attaches a modified version of the form, one in which Mr. Leishman "cop[ied] the text of his claim notice into a format that can be easily read by the Court and others." Dkt. # 28 at 2. Incorporating Defendants' online tort claim form ensures that no content was omitted during re-formatting.

### iii.   Statutory Notice Requirements (Wash. Rev. Code § 4.92.100)

"All claims against the state, or against the state's officers, employees, or volunteers, acting in such capacity, for damages arising out of tortious conduct, must be presented to the office of risk management." Wash. Rev. Code Ann. § 4.92.100. The standard claim form must, at minimum, contain the following:

> (i) The claimant's name, date of birth, and contact information;
>
> (ii) A description of the conduct and the circumstances that brought about the injury or damage;
>
> (iii) A description of the injury or damage;
>
> (iv) A statement of the time and place that the injury or damage occurred;
>
> (v) A listing of the names of all persons involved and contact information, if known;
>
> (vi) A statement of the amount of damages claimed; and
>
> (vii) A statement of the actual residence of the claimant at the time of presenting the claim and at the time the claim arose.

*Id.* (emphasis added). Section 4.92.100 "must be liberally construed" as to the "content of claims" and "all procedural requirements" under the section. *Id.* "[S]ubstantial compliance will be deemed satisfactory." *Id.*

Given the errata, much of Defendants' initial argument no longer applies. They

ORDER – 8

concede that Mr. Leishman did in fact file a claim form.  Dkt. # 27.  Their argument has since shifted.  Now they argue that Mr. Leishman's claim form does not list all the parties it should have, specifically the Defendants that were added by amendment.  Dkt. # 30 at 9-10.

Defendants' argument—that Mr. Leishman's tort claim form is deficient because it does not expressly identify every Defendant—is unsupported by authority.  In fact, the plain language of § 4.92.100 suggests otherwise.  Under that section, a claimant must list on the form the "names of all persons involved . . ., *if known*."  Wash. Rev. Code Ann. § 4.92.100(1)(a)(v) (emphasis added).  Defendants do not argue that Mr. Leishman knew the names of all persons involved when he submitted the form.  And in any event the statute "must be liberally construed" to account for "substantial compliance."  *Id.* § 4.92.100(3).

The Court finds that Mr. Leishman's tort claim form meets the statutory requirements.  Dkt. # 11-1 at 145-46; Dkt. # 27.  It identifies, by name, several Defendants (AGO, WWU, and Shepard).  Dkt. # 27 at 6-7, 9.  It contains Mr. Leishman's name, contact information, residence at the time he presented his claim, and residence at the time of the incident.  *Id.* at 6-7.  It contains a detailed description of the incident, explaining the time and place of the injury.  *Id.* at 7-19.  It even attaches a timeline of "key events during the period from July 2015 to May 2016."  *Id.* at 11.  To be sure, it does not expressly name any Defendant other than the three identified above.  Instead it makes vague references to "colleagues" and "senior personnel at the Attorney General's Office and at WWU."  *Id.* at 8.  But on balance the Court finds that Mr. Leishman has substantially complied with the statute.  Wash. Rev. Code Ann. § 4.92.100(1)(a)(i)-(vii) (listing all content requirements of standard tort claim form).

### D.  Release of Claims Under Settlement Agreement

Defendants next argue that Mr. Leishman's claims are barred by a settlement agreement entered on November 29, 2016 ("2016 Settlement Agreement").  Dkt. # 26 at

ORDER – 9

14-16.  That agreement, they say, precludes any relief for "discrimination (Fourth Claim) and negligence (Fifth Claim) and his alternative claims for misrepresentation (Second Alternative Claim), disability discrimination (Third Alternative Claim), and sexual orientation discrimination (Fourth Alternative Claim)."  *Id.* at 16.  The Court must first address the threshold issue of whether to incorporate the 2016 Settlement Agreement by reference.

### i.    Incorporation-by-Reference

The settlement agreement is not attached to the Amended Complaint.  But the complaint mentions it.  Dkt. #11 ¶¶ 109-14, 175-76, 182, 191.  Indeed, the relief Mr. Leishman seeks includes "[r]escission or reformation of the Settlement Agreement and Release as deemed appropriate by the Court."  *Id.* ¶ 191.  And his seventh claim is for Defendant AGO's alleged breach of the agreement.  *Id.* ¶¶ 174-76.  Because Mr. Leishman's claims and requested relief necessarily depend on the 2016 Settlement Agreement, the Court incorporates it by reference.  *See Khoja*, 899 F.3d at 1002 (9th Cir. 2018) (explaining that it was proper to incorporate an allegedly defamatory photo and caption in a defamation case "because the claim necessarily depended on them").

### ii.   Ambiguous Terms

The 2016 Settlement Agreement applies to all claims "arising out of occurrences, or events described in [Mr. Leishman's] claim for damages filed by the claimant and attached hereto."  Dkt. # 26-1 at 5.  Mr. Leishman's claim, however, is not so attached.  Looking only to the terms of the 2016 Settlement Agreement and the allegations in the Amended Complaint, the Court cannot discern what these "occurrences" or "events" are exactly.  As presented—that is, without the benefit of Mr. Leishman's "claim for damages"—those terms are ambiguous.  As such, they raise factual disputes that cannot be determined as a matter of law.  Thus, at this stage, the Court cannot determine what the scope of the 2016 Settlement Agreement is and what claims in this action may be barred under that agreement.

ORDER – 10

1

### E.     Eleventh Amendment and Qualified Immunity

2

The Eleventh Amendment "bars suits which seek either damages or injunctive

3

relief against a state, an 'arm of the state,' its instrumentalities, or its agencies."

4

*Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) (per curiam).  To determine

5

whether an entity is an arm of the state, courts look to "the way state law treats the

6

entity."  *Id.* (quoting *Mitchell v. Los Angeles Community College District*, 861 F.2d 198,

7

201 (9th Cir. 1988)).

8

Likewise, government officials enjoy qualified immunity from civil damages

9

unless their conduct violates "clearly established statutory or constitutional rights of

10

which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818

11

(1982).  In deciding whether qualified immunity applies, the Court must determine

12

(1) whether the facts alleged show the defendant's conduct violated a constitutional right;

13

and (2) whether that right was clearly established at the time of the violation.  *Pearson v.*

14

*Callahan*, 555 U.S. 223, 230-32 (2009).  "[Q]ualified immunity is an affirmative defense,

15

and the burden of proving the defense lies with the official asserting it."  *Houghton v.*

16

*South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citations omitted).

17

Defendants argue that the "State, its agencies, and the individual defendants in

18

their official capacity" are immune from suit under the Eleventh Amendment.  Dkt. # 26

19

at 21.  Similarly, they argue that the "Public Accountability Defendants" are entitled to

20

qualified or absolute immunity.  *Id.* at 21-22.  Their arguments in support of each

21

immunity defense amount to little more than generic rule statements.  Stripping away

22

those statements, the Court is left with just two conclusory propositions: "[u]nder the

23

Eleventh Amendment, the State and the Public Accountability Defendants are immune

24

from Plaintiff's § 1983 claims," and, for qualified immunity, Mr. Leishman failed to meet

25

his burden "of establishing the contours of the clearly establish law he claims the Public

26

Accountability Defendants violated."  *Id.*

27

Defendants have not offered any serious explanation of why they are entitled to

28

ORDER – 11

either type of immunity, and the Court will not make that argument for them.  At this stage, the Court will not dismiss Mr. Leishman's claims on immunity grounds.

### F.    Statute of Limitations

"A claim may be dismissed as untimely pursuant to a [Federal Rules of Civil Procedure] 12(b)(6) motion 'only when the running of the statute [of limitations] is apparent on the face of the complaint.'"  *United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (second alteration in original) (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010)).

Defendants argue that several of Mr. Leishman's claims are almost ten months too late.  Dkt. # 26 at 12-14.  They argue that his discrimination and misrepresentation claims (Claims 4 and 5; Alternative Claims 2 through 4) are barred by a three-year statute of limitations.  *Id.*  And they appear to argue that his federal § 1983 claim is similarly barred.  *Id.*

According to Defendants, the statute of limitations for these claims began to accrue no later than May 9, 2016.  *Id.*  That was when Mr. Leishman received the OMW Report.  Dkt. # 11 ¶ 103.  The report expressly disclosed the scope of the OMW investigation.  *Id.* ¶ 87.  It stated that it involved "two issues: A) whether Assistant Attorney General Roger Leishman experienced discrimination based on his sexual orientation; and B) whether Mr. Leishman conducted himself appropriately in a March 1, 2016 meeting in his office with his supervisor."  *Id.*  Defendants reason that when Mr. Leishman received the report, he knew that the scope OMW investigation had expanded.  Dkt. # 26 at 13.  And they say that is when his claims began to accrue.  *Id.*  Given a three-year statute of limitations, and even allowing for Washington's 60-day tolling period for tort claims, Defendants calculate that Mr. Leishman "only had until July 10, 2019 to sue on his claims for discrimination, retaliation, and misrepresentation based on the OMW Report, alleged employment discrimination and purported misrepresentation."  *Id.* at 14.

ORDER – 12

1    Mr. Leishman filed this suit in state court on April 24, 2020.  Dkt. # 1-2.  Under

2    Defendants' calculations, that is 289 days too late.  Dkt. # 26 at 14.

3            In response, Mr. Leishman argues that his claims are timely.  According to him, he

4    "had no reason to suspect" that Defendant AGO helped enlarge the scope of the OMW

5    investigation, something that he initially believed to be "a result of Pearce's own mission

6    creep."  Dkt. # 28 at 18.  He says he only discovered Defendant AGO's involvement on

7    October 20, 2017, when OMW produced an email revealing to him that "Chief Deputy

8    Attorney General Esquibel secretly altered the official scope of the AGO's investigation."

9    *Id.*; Dkt. # 11 ¶¶ 122-24.

10           Defendants' statute of limitations defense raises factual issues unfit for a motion to

11   dismiss.  Defendants say that the statute began to accrue on May 9, 2016.  Mr. Leishman

12   says that it began to accrue more than a year later, on October 20, 2017.  The Court

13   cannot resolve this dispute looking only to the face of the complaint.

14           To start, neither party addresses whether Mr. Leishman's state discrimination

15   claims are subject to the discovery rule.  Indeed, the parties do not explain how the

16   accrual analysis for Mr. Leishman's discrimination claims differs, if at all, from his other

17   claims.  *Cf. Fall v. Delta Air Lines Inc*, No. 2:15-cv-00919-JCC, 2016 WL 2962232, at

18   *5 (W.D. Wash. May 20, 2016), *aff'd*, 731 F. App'x 678 (9th Cir. 2018) ("Under

19   Washington law, the statute of limitations begins to run when a discrete act of

20   discrimination or retaliation occurs." (citing *Antonius v. King County*, 103 P.3d 729, 732

21   (Wash. 2004)).  But the Court need not reach that issue here because the statute of

22   limitations defense ultimately raises factual issues.

23           Defendants correctly argue that when Mr. Leishman received the OMW Report on

24   May 9, 2016, he should have known that the scope of the OMW investigation had been

25   expanded to include more than his sexual orientation discrimination complaint.  Dkt. # 26

26   at 14.  The report expressly stated that its scope also included, "B) whether Mr. Leishman

27   conducted himself appropriately in a March 1, 2016 meeting in his office with his

28   ORDER – 13

supervisor." Dkt. # 11 ¶ 87.

But when Mr. Leishman knew or should have known that Defendant AGO was involved in that expansion is a different question. Mr. Leishman alleges that, at the outset, he had no reason to know that Defendant AGO "secret[ly] expan[ded]" the scope of the OMW investigation. *Id.* ¶¶ 122-24. According to the Amended Complaint, he only discovered that fact through discovery in his separate case against OMW and Mr. Pearce. *Id.* ¶ 123. On October 20, 2017, "OMW belatedly produced a copy of Pearce's March 16, 2016 email to Esquibel and Hanson." *Id.* The email revealed that Defendant Esquibel and Defendant Hanson were involved in the "secret expansion" of the OMW investigation. *Id.* On a motion to dismiss, the Court must credit this well-pleaded factual allegation as true and draw all reasonable inferences in Mr. Leishman's favor. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 663 (9th Cir. 1998).

In sum, when Mr. Leishman knew or should have known that Defendant AGO was involved in expanding the OMW investigation's scope is not apparent on the face of the Amended Complaint. The Court will not rule on the statute of limitations defense here.

In their reply, Defendants argue that Mr. Leishman failed to address many of their arguments. Dkt. # 30 at 6-7. Specifically, they say that "Mr. Leishman does not identify any allegedly wrongful conduct by Defendant Shepard after 2016" and that Mr. Leishman is "equally silent regarding the alleged factual basis for the liability of Defendants Shinn, Beusch, Dietrich, and Petrie after they settled his alleged employment claims in 2016." *Id.* By failing to address these individuals, Defendants say, Mr. Leishman "implicitly concedes dismissal" of the claims against them. *Id.*

An implicit concession, however, is not enough to turn the factual issue presented here into a legal one. As explained above, when Mr. Leishman knew or should have known that Defendant AGO (which includes the individual Defendants within it) expanded the scope of the OMW investigation is not apparent on the face of the

ORDER – 14

Amended Complaint.  An implicit concession by Mr. Leishman does not change that.

As to Defendant Shepard, Defendants argue that any conduct attributed to him in the Amended Complaint must "necessarily have occurred before Defendant Shepard's 2016 retirement from WWU," making the claims against him untimely.  Dkt. # 26 at 8, 14.  But the Amended Complaint does not mention Defendant Shepard's retirement or when it occurred.  Dkt. # 11.  As is the case with the other Defendants, looking only at the face of the complaint, the Court cannot determine that Mr. Leishman's claims against Defendant Shepard are untimely.

### G.    Violation of the Washington Constitution (Claim 2)

Washington courts have rejected attempts to create a private right of action for damages under the Washington Constitution absent guidance from the legislature." *Dunn v. City of Seattle*, 420 F. Supp. 3d 1148, 1156 (W.D. Wash. 2019); *see also Blinka v. Washington State Bar Ass'n*, 36 P.3d 1094, 1102 (Wash. Ct. App. 2001) ("Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations 'without the aid of augmentative legislation[.]'" (quoting *Sys. Amusement, Inc. v. State*, 500 P.2d 1253 (Wash. Ct. App. 1972)).

Mr. Leishman's second claim is for a violation of Article I, Section 4 of the Washington Constitution.  Dkt. # 11 ¶¶ 158-60.  Defendants argue that Mr. Leishman may not state a private right of action directly under the Washington Constitution.  Dkt. # 26 at 16.  Mr. Leishman does not respond to this argument.  Dkt. # 28.  The Court agrees with Defendants.  Because there is no private right of action for a violation of Article I, Section 4 of the Washington Constitution, this claim must be dismissed with prejudice.

### H.    Deficiencies Under FRCP 8(a) and 9(b)

Defendants challenge the Amended Complaint under both Rule 8(a) and Rule 9(b) of the Federal Rules of Civil Procedure.  Dkt. # 26 at 18-21.  The Court addresses each in turn.

ORDER – 15

### i.     FRCP 8(a)

Under Rule 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  When a plaintiff sues multiple defendants, he "must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2)." *Altman v. PNC Mortg.*, 850 F. Supp. 2d 1057, 1067 (E.D. Cal. 2012) (quoting *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)).  "Specific identification of the parties to the activities alleged by the plaintiffs is required in this action to enable the defendant to plead intelligently." *Id.* (quoting *Van Dyke Ford, Inc. v. Ford Motor Co.*, 399 F. Supp. 277, 284 (D. Wis. 1975)).

Other courts have echoed this proposition. *See, e.g.*, *Kandi v. Langford*, No. 2:17-cv-03617-FMO-JC, 2018 WL 5999605, at \*12 (C.D. Cal. Nov. 14, 2018) ("The Second Amended Complaint also never clearly connects any particular event or incident to any specific legal claim against any particular defendant, and fails to mention the specific date, time, duration, or location of any particular incident which allegedly caused a deprivation of plaintiff's rights under federal law."); *Ojmar US, LLC v. Sec. People, Inc.*, No. 4:16-cv-04948-HSG, 2017 WL 3301214, at \*2 (N.D. Cal. Aug. 2, 2017) ("Without alleging specific facts regarding [individual defendant]'s conduct, Plaintiff has not intelligibly stated claims [] against him, leaving him insufficiently informed about the liability theories he faces and requiring the Court to speculate regarding how [individual defendant] has participated in these alleged violations.").

Defendants launch a "global attack" on the Amended Complaint "because it does not satisfy even the most basic rules of pleading."  Dkt. # 26 at 18.  They say given that the complaint "fails to identify any specific basis for the alleged liability of any Defendant," they cannot answer or defend such claims. *Id.* at 19.

Defendants' argument is well-taken.  Throughout the complaint Mr. Leishman often attributes wrongdoing to the "AGO Defendants," collectively. *See, e.g.*, Dkt. # 11 ¶ 105.  The term "AGO Defendants" lumps together individual defendants such as

ORDER – 16

Defendants Esquibel, Purcell, Beusch, Dietrich, Ferguson, LiaBraaten, Petrie, and Shinn. *Id.* ¶ 13. Elsewhere, he asserts wrongdoing by the Defendant AGO, without identifying any individual actor. *See, e.g.*, *id.* ¶¶ 31, 68. And he further lumps together the AGO Defendants with Defendant Reynolds and Defendant Office Risk Management to form "the Public Accountability Defendants." *Id.* ¶ 16.

Surely, pleading this way makes it difficult to discern what actions are attributed to each Defendant. In all, however, the Court finds that the Amended Complaint does not violate Rule 8 and that Defendants' argument must be rejected. Though Mr. Leishman sometimes ascribes actions to the entire state agency, he also alleges actions by individual defendants. For example, he alleges that individual Defendant Esquibel directed OMW to "to investigate a second issue with no connection to Leishman's complaint of employer discrimination on the basis of sexual orientation." Dkt. # 11 ¶ 67. He also alleges that individual Defendants Esquibel and Hanson "intended to use the Employee Conduct Allegations as a pretext for terminating Leishman's employment." *Id.* ¶ 71. And though the Amended Complaint gives less attention to the other individual Defendants, it still alleges some individual conduct by each. *See, e.g.*, *id.* ¶¶ 29, 37-38 (allegations related to Defendant Beusch); *id.* ¶¶ 38-39, 189 (allegations related to Defendant Shinn); *id.* ¶¶ 133-35 (allegations related to Defendant Reynolds).

Though a close call, the Court determines that these allegations barely meet the threshold pleading requirements under Rule 8. The Court will not say whether these factual allegations are sufficient to state a claim because that is not the argument that Defendants made in their motion. Dkt. # 30 at 1 ("Defendants' Motion to Dismiss is not about the merit of Mr. Leishman's claims . . . ."). But the Court will say that Defendants' Rule 8 challenge here must fail. Defendants know what Mr. Leishman is alleging against them and may respond accordingly. *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1132 (9th Cir. 2008) (reversing a dismissal of a complaint under Rule 8 because the complaint "delineate[d] the claims and the [d]efendants against whom the claims are

ORDER – 17

made" and because defendants "should have no difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss").

In sum, Defendants have fair notice of the allegations against them and the grounds on which Mr. Leishman seeks relief, making dismissal under Rule 8 improper. For this reason, Defendants' separate request for a more definite statement is also denied. Dkt. # 26 at 23. If Mr. Leishman chooses to amend his complaint, he must ensure that his future pleading adheres to Rule 8.

### ii.    FRCP 9(b)

Their global Rule 8 challenge aside, Defendants also challenge Mr. Leishman's fraud-based claims under Rule 9(b). Dkt. # 26 at 19-21. Defendants argue that Mr. Leishman's conspiracy and misrepresentation claims fail to meet Rule 9(b)'s heightened pleading standard.

Rule 9(b) of the Federal Rules of Civil Procedure establishes heightened pleading standards for claims "grounded in fraud," a category that includes any claim relying upon a "unified course of fraudulent conduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). For such claims, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106 (internal quotation marks omitted). The averments must include "the who, what, when, where, and how" of the misconduct charged. *Id.* (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). What is more, the complaint must state the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). Rule 9(b) applies to civil conspiracy claims when "the object of the alleged

ORDER – 18

conspiracy is fraudulent." *Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 990 (9th Cir. 2006).

Mr. Leishman's conspiracy and misrepresentation claims sound in fraud and are thus subject to Rule 9(b)'s heightened pleading standard.  Though unclear, these claims appear to be based on several of Defendant's misrepresentations to Mr. Leishman.  For example, Mr. Leishman alleges that the OMW investigation was "secretly expanded" by the Defendant AGO, despite assurances that the scope of the investigation was limited to his complaint of sexual orientation discrimination.  Dkt. # 11 ¶¶ 44-51, 61-77.  Further, he alleges that "Defendants intentionally concealed information" to fraudulently induce Mr. Leishman into entering the 2016 Settlement Agreement.  *Id.* ¶¶ 109-14.  His allegations suggest that these fraudulent acts were committed by several Defendants acting in concert.  *Id.* ¶¶ 105-07.

Mr. Leishman's conspiracy claim is subject to Rule 9(b).  The Amended Complaint lacks the who, what, when, where, and how of the alleged conspiracy.  It offers conclusory allegations that "before and after November 2016, Defendants conspired to harm Leishman" and "conspired to conceal their wrongdoing."  Dkt. # 11 ¶¶ 147, 149, 162.  It does not allege what that conspiracy is, let alone who was a part of it, what it was for, when it was formed, or any other essential components.  Perhaps even more fundamental, Mr. Leishman has also failed to allege any agreement between Defendants at all.  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1868 (U.S. 2017) ("To state a claim under § 1985(3), a plaintiff must first show that the defendants conspired—that is, reached an agreement—with one another.").

Mr. Leishman's misrepresentation claim similarly fails.  For nearly every Defendant, Mr. Leishman fails to allege a statement or representation at all, let alone a misstatement or misrepresentation.  As to these Defendants, Mr. Leishman's misrepresentation claim certainly fails.  For some Defendants, Mr. Leishman alleges at least some representation.  *See, e.g.*, Dkt. # 11 ¶ 39 (representation by Defendant Shinn

ORDER – 19

that "the Attorney General's Office was aware of his sexual orientation discrimination complaint and took it seriously"); *id.* ¶ 60 (representation by Defendant Hanson that "the Attorney General's Office was waiting for OMW to complete its investigation into Leishman's sexual orientation discrimination complaint" before it would respond).  To the extent the Amended Complaint does contain allegations of a given Defendant's statements, the Court holds that these representations are insufficient under Rule 9(b). These allegations simply do not provide the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."  *Sanford*, 625 F.3d at 558 (quoting *Edwards*, 356 F.3d at 1066).

Thus, Mr. Leishman's claims for conspiracy (Claim 3) and misrepresentation (Alternative Claim 2) fails to meet the heightened pleading standard under Rule 9(b) and are dismissed.

## I.      Motion to Stay Discovery (Dkt. # 49)

Defendants moves to temporarily stay discovery "until such time as this Court issues a ruling on Defendants' pending Motion to Dismiss (Dkt. No. 26)."  Dkt. # 49. The Court has now ruled on Defendants' motion to dismiss, mooting the request for a stay.

## V.   CONCLUSION

The Court closes with a word on civility.

> "The justice system cannot function effectively when the professionals charged with administering it cannot even be polite to one another. Stress and frustration drive down productivity and make the process more time-consuming and expensive. Many of the best people get driven away from the field.  The profession and the system itself lose esteem in the eyes of the public."

The Honorable Sandra Day O'Connor, Associate Justice, Civil Justice Improvements (Dec. 12, 1993), https://www.c-span.org/video/?55555-1/civil-justice-improvements (18:45 to 19:17).

ORDER – 20

Mr. Leishman calls Defendant Esquibel "bone-headed" and chalks up Defendants' actions to "stupidity."  Dkt. # 28 at 22-23; Dkt. # 50 at 1.  These are but two examples found in the parties' briefing.  Such *ad hominem* attacks must end.  That is not a recommendation; it is a command.  Any other attack of this sort, casted by either party, will not be tolerated.  Any future submission containing such an attack will be stricken from the record.

For the reasons stated above, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Dkt. # 26) and **DENIES as moot** Defendants' Motion to Temporarily Stay Discovery (Dkt. # 49).  Mr. Leishman's civil conspiracy and misrepresentation claims are **DISMISSED with leave to amend**.  The Court grants Mr. Leishman leave to file an amended complaint within thirty days of the entry of this Order.

DATED this 25th day of March, 2021.

The Honorable Richard A. Jones
United States District Judge

ORDER – 21