HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROGER LEISHMAN,

                        Plaintiff,

     v.

WASHINGTON ATTORNEY
GENERAL'S OFFICE; SHANE
ESQUIBEL and ANN ESQUIBEL;
NOAH PURCELL; ELIZABETH
CHRISTINA BEUSCH; PAIGE
DIETRICH; ALLYSON JANAY
FERGUSON; KARI HANSON;
SUZANNE LIABRAATEN; VALERIE
PETRIE; MICHAEL JAMES SHINN;
OFFICE OF RISK MANAGEMENT;
KATHRYN NADINE REYNOLDS;
WESTERN WASHINGTON
UNIVERSITY; BRUCE SHEPARD and
CYNDIE SHEPARD; and the OFFICE OF
THE GOVERNOR.

                        Defendants.

No. 2:20-cv-00861-RAJ

SECOND AMENDED
COMPLAINT

JURY DEMANDED

Plaintiff Roger Leishman alleges as follows:

## I.  INTRODUCTION

1.     No one is above the law – not even lawyers, let alone government lawyers. In Spring 2016, two of the State's top employment lawyers, Chief Deputy Attorney

SECOND AMENDED COMPLAINT - 1

General Shane Esquibel and Senior Counsel Kari Hanson, in concert with additional State employees and the State's outside vendors, mishandled the State's response to petitions made by a gay disabled employee. When other lawyers in the Attorney General's Office discovered Defendant Esquibel's and Defendant Hanson's errors, they chose not to correct or to mitigate the impact of their colleagues' mistakes. Instead, Defendants and their co-conspirators embarked on a shameful campaign of discrimination, denial, cover up, and abuse of power. This lawsuit is the result.

## II.  PARTIES

2.      Plaintiff Roger Leishman is a resident of Whatcom County, Washington.

3.      Defendant Washington Attorney General's Office is an agency of the State of Washington.

4.      Defendant Shane Esquibel is the Chief Deputy Attorney General of Washington. From September 16, 2014 to March 20, 2016, Defendant Esquibel was the Division Chief of the Labor & Personnel Division of the Attorney General's Office. Defendant Esquibel is married to Ann Esquibel. At all times relevant herein, Defendant Esquibel acted for the benefit of the marital community, and under color of state law.

5.      Defendant Noah Purcell is the Solicitor General of Washington. At all times relevant herein, Defendant Purcell acted for the benefit of any marital community, and under color of state law.

6.      Defendant Elizabeth Christina Beusch is a Deputy Attorney General. At all times relevant herein, Defendant Beusch acted for the benefit of any marital community, and under color of state law.

7.      Defendant Paige Dietrich is an Assistant Attorney General, and previously served as a Deputy Attorney General. At all times relevant herein, Defendant Dietrich acted for the benefit of any marital community, and under color of state law.

SECOND AMENDED COMPLAINT - 2

8.    Defendant Allyson Janay Ferguson is an Assistant Attorney General assigned to the Torts Division. At all times relevant herein, Defendant Ferguson acted for the benefit of any marital community, and under color of state law.

9.    Until August 2019, Defendant Kari Hanson was an Assistant Attorney General assigned to the Labor & Personnel Division. At all times relevant herein, Defendant Hanson acted for the benefit of any marital community, and under color of state law.

10.    Defendant Suzanne LiaBraaten is an Assistant Attorney General assigned to the Torts Division. At all times relevant herein, Defendant LiaBraaten acted for the benefit of any marital community, and under color of state law.

11.    Defendant Valerie Petrie is an Assistant Attorney General, and Chief of the Labor & Personnel Division. At all times relevant herein, Defendant Petrie acted for the benefit of any marital community, and under color of state law.

12.    Defendant Michael James Shinn is an Assistant Attorney General, and Chief of the Regional Services Division. At all times relevant herein, Defendant Shinn acted for the benefit of any marital community, and under color of state law.

13.    Defendant Kathryn Nadine Reynolds is the Executive Director of the Washington Executive Ethics Board. At all times relevant herein, Defendant Reynolds acted for the benefit of any marital community and under color of state law.

14.    Defendant Office of Risk Management ("ORM") is an agency of the State of Washington.

15.    Defendant Western Washington University ("WWU") is an agency of the State of Washington.

16.    Defendant Bruce Shepard is the former President of WWU. Defendant Shepard is married to Cyndie Shepard. At all times relevant herein, Defendant Shepard

SECOND AMENDED COMPLAINT - 3

acted for the benefit of the marital community, and under color of state law.

17.     Defendant Office of the Governor is an agency of the State of Washington.

### III.   JURISDICTION AND VENUE

18.     Plaintiff Leishman brings this suit pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, the Americans with Disabilities Act ("ADA"), and the First and Fourteenth Amendments to the United States Constitution.

19.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

20.     Venue is properly in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claim occurred in this District.

### IV.   FACTS

**Plaintiff Roger Leishman**

21.     Leishman graduated from Yale Law School in May 1990, and has been a member of the Washington Bar since November 1990.

22.     After a distinguished twenty-five year career in private practice and public service, on July 14, 2015, Leishman began employment with the Washington Attorney General's Office in Bellingham as chief legal advisor to Western Washington University.

23.     Defendant Attorney General's Office hired Leishman because his experience and abilities were a good fit for the criteria identified both by Defendant Attorney General's Office and by Defendant Shepard.

24.     Leishman is a disabled gay single father with three school-aged children. Ever since Defendant Attorney General's Office unlawfully fired him in May 2016, Leishman has been unable to find employment as a result of misconduct by Defendants and their co-conspirators.

ROGER LEISHMAN, ESQ.
PO BOX 2207
BELLINGHAM, WASHINGTON  98227

**Leishman's disability**

25.     Shortly after commencing work at the Attorney General's Office, Leishman began exhibiting serious Body-Focused Repetitive Behaviors (including trichotillomania), anxiety, bruxism, insomnia, and other physical and mental symptoms.

26.     Leishman promptly disclosed his symptoms and his prior history of managing less serious anxiety symptoms to his supervisors at the Attorney General's Office.

27.     During an employee training in September 2015, when Defendant Beusch asked Leishman about his Body-Focused Repetitive Behaviors, Leishman informed Defendant Beusch that he had recently begun experiencing a virulent attack of anxiety symptoms.

28.     On October 2, 2015, Defendant Shinn was apprised of Leishman's disclosure that Leishman's disability causes him to rely on humor to manage his anxiety in challenging social situations.

29.     On October 16, 2015, Leishman informed Defendant Attorney General's Office that he had scheduled an appointment with a physician to evaluate his recent symptoms, and that he would let his employer know if Leishman's healthcare providers thought there was a need to consider potential accommodations.

30.     On October 16, 2015, Defendant Shinn was apprised that Leishman was consulting with his healthcare providers regarding the need for potential accommodations.

31.     On November 10, 2015, Leishman met with his new Bellingham physician, who diagnosed Leishman with Post-Traumatic Stress Disorder and serious codependency, and began his treatment.

32.     Leishman's healthcare providers determined that his symptoms were rooted in trauma that occurred decades before, but they were triggered and exacerbated by

ROGER LEISHMAN, ESQ.
PO BOX 2207
BELLINGHAM, WASHINGTON  98227

1   the conduct of Defendant Attorney General's Office and other representatives of the State.

2       33.     Leishman continues to suffer from debilitating physical and mental

3   symptoms triggered by the conduct of Defendants and their co-conspirators.

4   **Responses to Leishman's disability and sexual orientation**

5       34.     Leishman's symptoms affected his behavior, including his interactions with

6   others in the workplace.

7       35.     Some of Leishman's colleagues and some of his client contacts at WWU,

8   including Defendant Shepard, were bothered by behavior related to Leishman's disability.

9       36.     Assistant Attorney General Kerena Higgins ("Co-Conspirator Higgins")

10  serves as Bellingham Education Team Leader.

11      37.     While Leishman was employed by Defendant Attorney General's Office

12  and assigned the role of Defendant WWU's general counsel, he reported to Co-

13  Conspirator Higgins.

14      38.     Co-Conspirator Higgins acted as the agent of Defendant Attorney

15  General's Office at all times relevant herein.

16      39.     Co-Conspirator Higgins has spent her entire legal career employed by

17  Defendant Attorney General's Office.

18      40.     Prior to 2015, Co-Conspirator Higgins had never been assigned a

19  management role, and had no experience onboarding or supervising a senior lateral hire.

20      41.     Defendant Attorney General's Office negligently trained and supervised

21  Co-Conspirator Higgins.

22      42.     Because of the nature of Leishman's underlying traumas, Co-Conspirator

23  Higgins' conduct was a primary trigger of Leishman's symptoms.

24      43.     Assistant Attorney General Sarah Reyes ("Co-Conspirator Reyes") serves

25  as Bellingham Section Leader, and has responsibility for managing all employees in the

SECOND AMENDED COMPLAINT - 6

1    Bellingham Office of the Attorney General's Office.

2    44.    Co-Conspirator Reyes acted as the agent of Defendant Attorney General's

3    Office at all times relevant herein.

4    45.    Co-Conspirator Higgins is supervised by Co-Conspirator Reyes, who is

5    supervised by Defendant Shinn, who is supervised by Defendant Beusch, who is

6    supervised by the Chief Deputy Attorney General.

7    46.    In Fall 2015, Defendant Beusch and Defendant Shinn concluded that

8    Leishman was a bad fit for his position as WWU's chief legal advisor.

9    47.    Defendant Beusch and Defendant Shinn's conclusion was based on

10    erroneous reports about Leishman from Co-Conspirator Higgins and Co-Conspirator

11    Reyes, as well as Defendant Beusch's and Defendant Shinn's own personal judgments

12    regarding Leishman and his workplace conduct, including Leishman's conduct related to

13    his disability.

14    48.    Separate from Attorney General's Office's response to his disability,

15    Leishman was also the victim of a pattern of workplace homophobia.

16    49.    Although Defendant Attorney General's Office had adopted a formal

17    policy prohibiting discrimination on the basis of sexual orientation and disability, the

18    actual practice and culture at the Attorney General's Office focused only on preventing

19    discrimination involving visible characteristics like race and gender.

20    50.    Defendant Attorney General's Office, including Leishman's supervisors,

21    discouraged LGBT employees from being openly out of the closet.

22    51.    Defendant Attorney General's Office, including Leishman's supervisors,

23    discouraged disabled employees with nonobvious disabilities like mental illness from

24    being open about their disabilities.

25    52.    Defendant Beusch and Defendant Shinn's conclusion that Leishman was a

SECOND AMENDED COMPLAINT - 7

bad fit for his position as WWU's chief legal advisor was also based on erroneous reports about Leishman by Defendant Shepard.

53.     Defendant Shepard's treatment of Leishman was part of a pattern of abuse of power, including the unilateral firing of WWU's Internal Auditor after the auditor found irregularities in Defendant Shepard's expense account.

54.     The State ultimately paid over $200,000 to settle the Internal Auditor's wrongful termination claim.

55.     Defendant Shepard objected to Leishman's refusal to comply with Defendant Shepard's unlawful instructions.

56.     Defendant Shepard objected to Leishman's attempts to counsel WWU to refrain from unlawful conduct.

57.     Defendant Shepard's homophobic, ableist, and racist conduct contributed to a hostile workplace.

**Leishman's request for disability accommodation**

58.     Kim Siebs ("Co-Conspirator Siebs") is a Human Resources Consultant with the Attorney General's Office.

59.     Co-Conspirator Siebs acted as the agent of Defendant Attorney General's Office at all times relevant herein.

60.     After repeatedly attempting to communicate with his employer about his disability and symptoms, on January 22, 2016, at the direction of Co-Conspirator Reyes, Leishman submitted a formal request for an accommodation of his disability to Co-Conspirator Siebs.

61.     In his January 22, 2016 email to Co-Conspirator Siebs, Leishman offered his and his PTSD-specialist therapist's assistance in adapting the AGO's generic medical questionnaire template to address specific mental health issues.

SECOND AMENDED COMPLAINT - 8

62.     In his January 22, 2016 email to Co-Conspirator Siebs, Leishman also alerted her to examples of adverse action taken against him in apparent violation of the Washington Law Against Discrimination ("WLAD"), and informed Co-Conspirator Siebs that Leishman expected that Defendant Attorney General's Office's ultimate resolution of his pending professional development and review process would include a mechanism for reversing his employer's adverse actions. (A copy of Leishman's January 22, 2016 email is included in Exhibit A hereto.)

63.     Rather than work with Leishman and his healthcare providers as requested by Leishman, on February 4, 2016 Co-Conspirator Siebs sent a Medical Questionnaire to Leishman's PTSD therapist that included offensive, false, and homophobic accusations about Leishman's workplace conduct.

64.     On February 9, 2016, under Defendant Beusch's supervision, Defendant Shinn, Defendant Hanson, and Co-Conspirator Siebs met to confer regarding both Leishman's professional development and review process and his parallel request for an accommodation of Leishman's disability.

65.     On February 22, 2016, Leishman supplemented his disability accommodation request with a detailed memo describing his situation. (A copy of Leishman's February 22, 2016 memo is included in Exhibit A hereto.)

66.     Neither Leishman nor his therapist was an expert in the good faith interactive reasonable accommodation process that all employers are required to participate in under the ADA and the WLAD.

67.     On February 23, 2016, Defendant Beusch, Defendant Shinn, and Co-Conspirator Siebs concluded that the materials provided by Leishman's therapist in response to the Medical Questionnaire prepared by Defendant Attorney General's did not

SECOND AMENDED COMPLAINT - 9

include sufficient medical information, and therefore no accommodation was needed for Leishman to perform the essential functions of his position.

68.    On March 1, 2016, Co-Conspirator Siebs sent Leishman a memorandum from Defendant Beusch dated February 29, 2016 that denied Leishman's initial disability accommodation request based on enumerated grounds.

69.    Defendant Beusch's February 29, 2016 memorandum did not inform Leishman about Defendant Attorney General's Office conclusion that no accommodation was needed for Leishman to perform the essential functions of his position, and did not identify that conclusion as a basis for denying Leishman's reasonable accommodation request.

70.    On March 2, 2016, Leishman informed Co-Conspirator Siebs that he intended to challenge the decision by Defendant Attorney General's Office to deny his initial *pro se* reasonable accommodation request.

71.    Prior to the State's disclosure of documents under the Public Records Act in 2017, no one informed Leishman that Defendant Attorney General's Office took the position that Leishman did not need any accommodation in order to perform the essential functions of his job.

**Investigation into allegations of employer discrimination based on sexual orientation**

72.    During Leishman's long-delayed January 7, 2016 performance evaluation meeting with Defendant Beusch and Defendant Shinn, Leishman discovered Defendant Attorney General's Office had taken adverse employment action against him in October 2015 based on homophobic allegations made by Co-Conspirator Higgins. Neither Higgins nor anyone else from the Attorney General's Office had previously informed Leishman about her allegations.

SECOND AMENDED COMPLAINT - 10

73.     On March 2, 2016, Leishman submitted a formal sexual orientation complaint pursuant to the Attorney General's Office's written anti-discrimination policy. Leishman alleged the Attorney General's Office had discriminated against him on the basis of sexual orientation in its handling of Higgins' homophobic allegations, and that the Attorney General's Office's actions were part of a pattern of implicit and explicit workplace homophobia.

74.     A copy of Leishman's sexual orientation discrimination complaint, including its explanatory cover email and accompanying background materials related to Leishman's separate pending disability accommodation request, is attached as **Exhibit A**.

75.     Leishman's sexual orientation discrimination complaint contended the Attorney General's Office acted on the basis of deeply rooted implicit and explicit homophobia, including when Leishman's employer took serious adverse action against him (such as giving $3,000 raises to every Assistant Attorney General except Leishman in October 2015).

76.     In his March 2, 2016 email forwarding his sexual orientation discrimination complaint, Leishman informed Defendant Attorney General's Office that he would respond separately to the denial of his separate reasonable accommodation request.

77.     On March 2, 2016, Defendant Attorney General's Office forwarded the email with Leishman sexual orientation discrimination complaint and its accompanying background materials to Defendant Esquibel, Defendant Beusch, Defendant Dietrich, Defendant Shinn, and Co-Conspirator Siebs.

78.     On March 3, 2016, Defendant Esquibel, Defendant Beusch, Defendant Dietrich, Defendant Hanson, and Defendant Shinn met for the purpose of discussing the status of Leishman's employment.

ROGER LEISHMAN, ESQ.
PO BOX 2207
BELLINGHAM, WASHINGTON  98227

79.     On March 3, 2016, Defendant Attorney General's Office circulated a "Litigation Hold Notice," still in effect, that forbids State representatives from destroying records related to Leishman's employment.

**Defendant Attorney General's Office's abusive "home assignment"**

80.     On Friday, March 4, 2016, two days after submitting his sexual orientation discrimination complaint, Leishman sent an email to Deputy Attorney General Christina Beusch regarding his separate disability accommodation request. Leishman's email politely responded to each of the arguments set forth in Defendant Beusch's denial letter.

81.     On March 4, 2016, Defendant Beusch forwarded Leishman's email responding to the denial of his reasonable accommodation request to Defendant Esquibel, Defendant Hanson, Defendant Shinn, Co-Conspirator Siebs, and Rochelle LaRose ("Co-Conspirator LaRose").

82.     On March 4, 2016, Defendant Esquibel, Defendant Hanson, and Defendant Shinn met by telephone for the purpose of discussing the status of Leishman's employment.

83.     On Monday, March 7, 2016, Defendant Shinn came to Leishman's office at WWU after placing a noon meeting on his calendar that morning. Without any prior warning or explanation, Defendant Shinn handed Leishman a letter from Defendant Beusch placing Leishman on "home assignment," effective immediately.

84.     On March 7, 2016, Defendant Shinn also handed Leishman a copy of his long-delayed performance evaluation memorandum.

85.     Defendant Shinn purported to have prepared Leishman's March 7, 2016 performance evaluation memorandum based on feedback from Leishman's supervisors and identified representatives from Defendant WWU.

SECOND AMENDED COMPLAINT - 12

86.     Defendant Shinn's performance evaluation memorandum praised Leishman's legal skills, but criticized some of Leishman's workplace conduct.

87.     For example, in response to Defendant Shinn's questions, the Chair of the WWU Board of Trustees described Leishman as a "brilliant" lawyer who sometimes had trouble remaining "calm."

88.     Defendant Shinn's performance evaluation memorandum included homophobic criticisms.

89.     Defendant Shinn concealed the fact that Defendant Shepard was the source of homophobic criticisms included in the performance evaluation memorandum.

90.     Defendant Attorney General's Office identified the Personnel Investigation into Leishman's sexual orientation discrimination complaint as the sole reason for placing Leishman on home assignment.

91.     During their March 7, 2016 meeting, Defendant Shinn informed Leishman that Defendant Attorney General's Office took his discrimination allegations seriously, and said Leishman would be contacted when someone was assigned to investigate his sexual orientation discrimination complaint.

92.     Leishman remained on home assignment from March 7, 2016 until his employment with the Attorney General's Office ended on June 1, 2016.

93.     During this home assignment, no one from Defendant Attorney General's Office or Defendant WWU ever contacted Leishman, except for administrative communications related to scheduling and the investigation into Leishman's sexual orientation discrimination complaint. The Attorney General's Office refused even to forward Leishman's personal and professional correspondence.

SECOND AMENDED COMPLAINT - 13

94.     Without informing Leishman, when Defendant Attorney General's Office placed Leishman on home assignment he was blocked from accessing both Defendant Attorney General's Office's computer network and Defendant WWU's computer network.

95.     Defendant Attorney General's Office did not assign Leishman any work while he was on home assignment.

96.     Defendant Attorney General's Office's abusive indefinite home assignment exacerbated Leishman's symptoms and caused substantial distress to him and his family.

97.     The interactive disability reasonable accommodation process was ***not*** on hold while Leishman was on home assignment.

**Engagement of licensed private investigators by State's attorneys**

98.     Ogden Murphy Wallace, PLLC ("OMW") is a private investigator agency regulated by the Department of Licensing under RCW 18.165.050.

99.     Patrick Pearce ("Co-Conspirator Pearce") is an unarmed private investigator licensed and regulated under RCW 18.165.030.

100.     At all times relevant herein, Co-Conspirator Pearce acted as the agent of OWM.

101.     Karen Sutherland ("Co-Conspirator Sutherland") is an unarmed private investigator licensed and regulated under RCW 18.165.030.

102.     Co-Conspirator Sutherland is a member of OMW and Chair of the agency's Employment & Labor practice area.

103.     During Spring 2016, Pam Skinner ("Co-Conspirator Skinner") was the Human Resources Director of the Attorney General's Office.

104.     At all times relevant herein, Co-Conspirator Skinner acted as the agent of Defendant Attorney General's Office.

105.     The State of Washington and OMW are parties to a two-tier Master

Contract ("the Master Contract") under which OMW is one of several licensed private investigator agencies authorized to provide enumerated Personnel Investigation Services to State agencies, including investigations regarding "Discrimination."

106.    The Master Contract provides that its terms, including the terms of any issued work order, may only be altered by written amendment.

107.    The Master Contract provides that any written work product prepared by OWM must comply with the terms of the Master Contract and work order.

108.    The Master Contract provides that OWM must retain all books, records, documents, data and other evidence related the provision of services under the Master Contract for a period of six years following the date of final payment.

109.    The Master Contract provides that all books, records, documents, data and other evidence related the provision of services under the Master Contract, including materials produced or retained by OWM, are public records.

110.    The Master Contract provides that Co-Conspirator Pearce and OMW acted in their individual and corporate capacities and not as agents, employees, partners, joint ventures, or associates of the State; that the parties intend that an independent contractor relationship will be created by the contract; and the employees or agents of one party shall not be deemed or construed to be the employees or agents of the other party for any purpose whatsoever.

111.    The Master Contract provides that during the performance of this contract, OMW shall comply with all applicable federal and state nondiscrimination laws, regulations and policies, including, but not limited to, Title VII of the Civil Rights Act, 42 U.S.C. section 12101 *et seq*.; the ADA; and the WLAD.

112.    On March 9, 2016, Co-Conspirator Skinner conferred by phone with Co-Conspirator Sutherland about engaging OMW under the Master Contract to conduct an

SECOND AMENDED COMPLAINT - 15

1    investigation into Leishman's complaint of sexual orientation discrimination.

2        113.    Defendant Attorney General's Office selected OMW to conduct the

3    investigation into Leishman's sexual orientation discrimination complaint because each of

4    the firm's licensed private investigators is also a member of the bar; because the Master

5    Contract provides for low hourly rates; and because OMW has a reputation for producing

6    investigation reports that are biased in favor of management and against employees.

7        114.    As authorized by the State's contract procurement process, Co-Conspirator

8    Skinner prepared a work order pursuant to the Master Contract (the "Work Order").

9        115.    In an March 9, 2016 email regarding "discrimination complaint," Co-

10   Conspirator Skinner informed Defendant Esquibel, Defendant Dietrich, and Co-

11   Conspirator Siebs that Defendant Attorney General Office would be engaging OMW to

12   investigate Leishman's complaint of sexual orientation discrimination, and that OWM

13   intended to assign Co-Conspirator Pearce to conduct the investigation.

14       116.    In her March 9, 2016 email, Co-Conspirator Skinner recommended that

15   Defendant Esquibel and Co-Conspirator Siebs call Co-Conspirator Pearce and give him

16   some history of the case as soon as the work order was completed.

17       117.    Defendant Dietrich likewise recommended that Defendant Esquibel and

18   Co-Conspirator Siebs communicate with Co-Conspirator Pearce about the investigation

19   into Leishman's discrimination complaint.

20       118.    In response to Co-Conspirator Skinner's March 9, 2016 email and

21   Defendant Dietrich's recommendation, Defendant Esquibel directed his assistant to

22   schedule a call regarding Leishman's discrimination complaint for March 11, 2016 with

23   Defendant Esquibel, Co-Conspirator Pearce, and Co-Conspirator Siebs.

24       119.    Defendant Esquibel directed his assistant to also include Defendant Hanson

25   in the call with Co-Conspirator Pearce regarding Leishman's discrimination complaint.

120.    On March 10, 2016, Co-Conspirator Skinner emailed the Work Order to Co-Conspirator Sutherland and Co-Conspirator Pearce for OMW's signature.

121.    In her March 10, 2016 email, Co-Conspirator Skinner informed Co-Conspirator Sutherland and Co-Conspirator Pearce that Defendant Dietrich preferred for "the complainant" to be interviewed in person.

122.    On March 10, 2016, Co-Conspirator Sutherland executed the Work Order prepared by Defendant Attorney General's Office.

123.    On March 15, 2016, Co-Conspirator Skinner executed the Work Order on behalf of Defendant Attorney General's Office.

124.    A copy of the Work Order is attached hereto as **Exhibit B**.

125.    The Work Order's "Statement of Work" provides that OWM will "conduct an investigation of allegations made by an employee of the AGO."

126.    Leishman is the sole complainant and the sole "employee of the AGO" identified in the Work Order.

127.    The Work Order authorized OMW to conduct an investigation solely into Leishman's allegations of discrimination based on sexual orientation.

128.    The Work Order authorized OMW to start work on March 16, 2016 and end work by May 4, 2016.

129.    OMW assigned Co-Conspirator Pearce to conduct the investigation requested by Defendant Attorney General's Office.

130.    OMW assigned Co-Conspirator Sutherland as the "Billing Member" and "Supervising Member," and divided the matter origination credit between Co-Conspirator Sutherland and Co-Conspirator Pearce.

131.    Co-Conspirator Sutherland had direct supervisory authority over Co-Conspirator Pearce.

ROGER LEISHMAN, ESQ.
PO BOX 2207
BELLINGHAM, WASHINGTON  98227

1    132.    Co-Conspirator Sutherland had knowledge of Co-Conspirator Pearce's

2 conduct of OMW's investigation into Leishman's sexual orientation discrimination

3 complaint during March 2016 and April 2016, and ratified Co-Conspirator Pearce's

4 conduct.

5 **Representations to Leishman regarding investigation scope**

6    133.    Co-Conspirator LaRose is a Managing Human Resources Consultant with

7 the Attorney General's Office.

8    134.    Co-Conspirator LaRose acted as the agent of Defendant Attorney General's

9 Office at all times relevant herein.

10    135.    Consistent with the Work Order, on March 15, 2016, Co-Conspirator

11 LaRose telephoned Leishman and informed him that Co-Conspirator Pearce had been

12 retained by the Attorney General's Office as an independent outside investigator to

13 investigate the allegations in Leishman's sexual orientation discrimination complaint.

14    136.    Because he was in the process of engaging an attorney with expertise in

15 disability and other employment issues, Leishman asked Co-Conspirator LaRose to

16 confirm the scope of the OMW's investigation was limited to his complaint of

17 discrimination based on sexual orientation, Leishman's own area of expertise.

18    137.    During her March 15, 2016 telephone conversation with Leishman, Co-

19 Conspirator LaRose confirmed OMW's investigation was limited to the sexual orientation

20 discrimination issues raised by Leishman's employee complaint.

21    138.    On March 16, 2016, Leishman spoke by telephone with Co-Conspirator

22 Pearce in preparation for their initial interview scheduled for the following day.

23    139.    During their March 16, 2016 telephone conversation, Leishman informed

24 Co-Conspirator Pearce he understood the scope of OMW's investigation was limited to

25 discrimination based on sexual orientation.

SECOND AMENDED COMPLAINT - 18

140.    On March 17, 2016 and again on April 16, 2016, Co-Conspirator Pearce interviewed Leishman alone in a conference room at OMW's Seattle office.

141.    At the beginning of their March 17, 2016 interview, consistent with the Work Order, Co-Conspirator Pearce confirmed to Leishman that OMW's investigation was limited to the sexual orientation discrimination issues raised by Leishman's complaint.

142.    Co-Conspirator Pearce never informed Leishman that the scope of his investigation assignment from Defendant Esquibel and Defendant Hanson covered anything other than Leishman's complaint of sexual orientation discrimination.

143.    During their March 17, 2016 interview, Co-Conspirator Pearce falsely informed Leishman that he was conducting an independent outside investigation into Leishman's discrimination complaint, that the conduct of the investigation was not directed by Leishman's employer, and that Co-Conspirator Pearce would follow the evidence wherever it led.

144.    Leishman reasonably relied on representations and material omissions by Defendant Attorney General's Office and its investigator regarding the scope and nature of OMW's investigation assignment.

**Defendant Attorney General's Office knew Leishman was represented by counsel**

145.    Recognizing his own attempts to communicate with his employer regarding his disability and his job performance were ineffective, during March 2016 Leishman interviewed various private employment attorneys.

146.    Leishman sought an experienced disability lawyer for the specific purpose of engaging with his employer on Leishman's behalf in the good faith interactive disability reasonable accommodation process required by the ADA and the WLAD.

ROGER LEISHMAN, ESQ.
PO BOX 2207
BELLINGHAM, WASHINGTON  98227

147.     On March 22, 2016, Leishman engaged employment attorney Sean Phelan of the Seattle firm Frank Freed Subit & Thomas. Ms. Phelan has substantial experience in disability, mental illness, and reasonable accommodation issues.

148.     During 2016, Ms. Phelan represented Leishman in connection with all issues related to his employment dispute, with the sole exception of Leishman's pending sexual orientation discrimination complaint.

149.     Upon reviewing copies of Leishman's correspondence with Defendant Attorney General's Office, Ms. Phelan recognized that Leishman and his PTSD therapist had not clearly communicated why an accommodation was needed for Leishman to perform the essential functions of his position, and that the parties had not completed their interactive reasonable accommodation dialogue.

150.     Ms. Phelan recognized that Leishman's disability had caused him to obsessively focus solely on the specific accommodation Leishman identified to his employer in his original reasonable accommodation request.

151.     At Ms. Phelan's direction, Leishman engaged a Bellingham psychiatrist for the purpose of evaluating Leishman and providing Defendant Attorney General's Office with additional medical information regarding Leishman's disability and its relationship to his behavior.

152.     On March 28, 2016, Ms. Phelan attempted to contact the Attorney General's Office regarding the status of Leishman's employment and potential accommodations of his disability.

153.     On March 29, 2016, Defendant Hanson telephoned Ms. Phelan and identified herself as the employment attorney representing the Attorney General's Office.

SECOND AMENDED COMPLAINT - 20

154.     In multiple communications to Defendant Hanson from March 29, 2016 through May 2, 2016, Ms. Phelan requested that Defendant Attorney General's Office engage in a good faith interactive dialogue about Leishman's disability.

155.     Defendant Hanson refused to communicate with Leishman's attorney about his disability, his accommodation request, his "home assignment," or the status of his employment.

156.     Defendant Hanson informed Ms. Phelan that the Attorney General's Office was waiting for OMW to complete its investigation into Leishman's sexual orientation discrimination complaint before Leishman's employer would respond to any of Ms. Phelan's inquiries.

157.     During April 2016, Defendant Attorney General's Office, Defendant Hanson, Defendant Esquibel, and Co-Conspirator Pearce each knew or should have known that Leishman was represented by an attorney.

**Secret expansion of OMW's investigation assignment**

158.     Leishman and his attorney did not know that Defendant Attorney General's Office had secretly expanded OMW's investigation assignment beyond sexual orientation discrimination issues without amending the contractual Work Order and without informing Leishman.

159.     Prior to the March 11, 2016 telephone conference referred to in Paragraph 118, Co-Conspirator Skinner forwarded to OMW a copy of Leishman's sexual orientation discrimination complaint and accompanying materials, Exhibit A hereto.

160.     During the March 11, 2016 telephone conference, Defendant Esquibel led a discussion regarding the actual scope of the investigation he was initiating ("the OMW Investigation").

161.     Defendant Esquibel directed the OMW Investigation.

SECOND AMENDED COMPLAINT - 21

162.     During the March 11, 2016 conference call, Defendant Esquibel directed Pearce to investigate a second issue with no connection to Leishman's complaint of employer discrimination on the basis of sexual orientation:  separate secret complaints from Leishman's supervisors at the Attorney General's Office regarding Leishman's interaction with his supervisor and other workplace conduct ("Employee Conduct Allegations").

163.     Defendant Attorney General's Office's lawyers and investigator intentionally concealed the Employee Conduct Allegations from Leishman and his attorney.

164.     The Employee Conduct Allegations included accusations related to Leishman's disability.

165.     During the March 11, 2016 conference call, Defendant Attorney General's Office characterized Leishman's workplace conduct to Co-Conspirator Pearce as "bizarre."

166.     Each participant in the March 11, 2016 conference call knew that the Employee Conduct Allegations involved behavior related to Leishman's disability.

167.     During the March 11, 2016 conference call, Defendant Esquibel informed Co-Conspirator Pearce that Defendant Attorney General's Office needed to get Leishman out of the workplace.

168.     The Employee Conduct Allegations reflected the Defendants' implicit and explicit bias against Leishman.

169.     Defendant Esquibel and Defendant Hanson intended to use the Employee Conduct Allegations as a justification for terminating Leishman's employment.

170.     At the conclusion of the March 11, 2016 telephone conference, Defendant Esquibel directed Co-Conspirator Pearce to coordinate the OWM Investigation with

SECOND AMENDED COMPLAINT - 22

Defendant Hanson, and to contact Defendant Esquibel if Defendant Hanson was unavailable.

171.    Following the March 11, 2016 telephone conference, at Co-Conspirator Pearce's request, Co-Conspirator Siebs sent him copies of Defendant Shinn's March 7, 2016 Performance Feedback Memorandum and Leishman's position description.

172.    During the March 16, 2016 telephone conversation with Leishman referred to in Paragraph 138, Co-Conspirator Pearce concealed from Leishman the fact that lawyers representing Defendant Attorney General's Office had already directed their investigator to include the Employee Conduct Allegations and Leishman's performance within the scope of the OMW Investigation.

173.    After speaking with Leishman on March 16, 2016, Co-Conspirator Pearce sent an email to Defendant Esquibel and Defendant Hanson informing them of Leishman's understanding that the scope of the OMW Investigation requested by Defendant Esquibel and Defendant Hanson was limited to discrimination based on sexual orientation ("Investigation Scope Email").

174.    A copy of the Investigation Scope Email downloaded from the public file in King County Superior Court Case No. 17-2-11921-1 is attached as **Exhibit C**.

175.    The Investigation Scope Email asked Defendant Attorney General's Office to confirm that the scope of the OMW Investigation included two separate issues: (1) discrimination based on sexual orientation; and (2) Employee Conduct Allegations.

176.    On March 16, 2016, Defendant Hanson responded to the Investigation Scope Email by confirming to Co-Conspirator Pearce, Defendant Esquibel, and Co-Conspirator Siebs their shared secret understanding regarding the scope of the OMW Investigation.

177.    Defendant Attorney General's Office never informed Leishman the scope

ROGER LEISHMAN, ESQ.
PO BOX 2207
BELLINGHAM, WASHINGTON  98227

of the OMW Investigation included any issue other than discrimination based on sexual orientation.

178.    If Leishman had known Defendant Attorney General's Office's and OMW's representations were false, Leishman and his disability lawyer would have objected immediately. They would have refused to participate any further in the purportedly "independent" investigation into Leishman's sexual orientation discrimination complaint, and they would have insisted Defendant Attorney General's Office engage without further delay in a good faith interactive process to address Leishman's separate pending disability accommodation request, and to communicate with Leishman's counsel regarding any performance concerns.

**Ethical violations by Defendants Esquibel and Hanson**

179.    During his initial *ex parte* interview with Co-Conspirator Pearce on March 17, 2016, when Leishman was still unrepresented, Leishman offered to prepare a chronology of events and evidence related to his employment.

180.    On April 5, 2016, Leishman sent Co-Conspirator Pearce copies of additional background materials related to his employment.

181.    On April 5, 2016, after Ms. Phelan had begun her representation, Co-Conspirator Pearce sent Leishman an email requesting that Leishman forward the chronology Leishman had referenced during their initial *ex parte* interview.

182.    On April 13, 2016, Leishman sent Co-Conspirator Pearce a detailed written chronology ("Leishman/AGO Chronology") enumerating multiple examples of homophobia and implicit bias at Defendant Attorney General's Office, outlining the history of his employment with the Attorney General's Office, and identifying additional witnesses and documents related to Leishman's sexual orientation discrimination complaint.

ROGER LEISHMAN, ESQ.
PO BOX 2207
BELLINGHAM, WASHINGTON  98227

183.    A copy of the Leishman/AGO Chronology is attached as **Exhibit D**.

184.    Leishman prepared the Leishman/AGO Chronology in April 2016 while on home assignment, based on his own recollection and on personal documents in his possession. In drafting the chronology, Leishman avoided references to tangential issues or to any information related to the various substantive legal matters Leishman worked on while employed by Defendant Attorney General's Office.

185.    On April 14, 2016, Co-Conspirator Pearce interviewed Leishman *ex parte* at OMW's Seattle office for over an hour, primarily regarding the Employee Conduct Allegations.

186.    Notwithstanding the requirements of Rule of Professional Responsibility 4.2, no one obtained Ms. Phelan's consent to communicate with Leishman *ex parte* regarding the subject matter of Ms. Phelan's representation.

187.    On April 29, 2016, Co-Conspirator Pearce provided his final investigation report ("Ogden Murphy Report") to Defendant Attorney General's Office.

188.    Neither Defendant Attorney General's Office nor OMW provided copies of the draft or final Ogden Murphy Report to Leishman or his attorney.

189.    Leishman and his attorney were never given any opportunity to review or discuss drafts of the Ogden Murphy Report, or to respond to the Employee Conduct Allegations and the supervisor Co-Conspirator Pearce relied on in reaching his conclusions about Leishman.

190.    Contrary to the terms of the contractual Work Order, the Ogden Murphy Report was not limited to the sexual orientation discrimination issues raised by Leishman's complaint.

191.    According to the Ogden Murphy Report, the OMW Investigation covered "two issues:  A) whether Assistant Attorney General Roger Leishman experienced

ROGER LEISHMAN, ESQ.
PO BOX 2207
BELLINGHAM, WASHINGTON  98227

1   discrimination based on his sexual orientation; and B) whether Mr. Leishman conducted

2   himself appropriately in a March 1, 2016 meeting in his office with his supervisor."

3       192.    The Ogden Murphy Report failed to address the extensive evidence of

4   implicit and explicit workplace homophobia at Defendant Attorney General's Office that

5   Leishman had provided and identified.

6       193.    The Ogden Murphy Report failed to address evidence of workplace

7   homophobia at Defendant Attorney General's Office that Co-Conspirator Pearce himself

8   had identified in a March 21, 2016 email to Co-Conspirator Siebs ("Institutional

9   Homophobia Email"). A copy of the Institutional Homophobia Email downloaded from

10  the public file in King County Superior Court Case No. 17-2-11921-1 is attached as

11  **Exhibit E**.

12      194.    The primary focus of the Ogden Murphy Report was the Employee

13  Conduct Allegations.

14      195.    The Ogden Murphy Report repeatedly relied on information obtained

15  during the investigator's *ex parte* interrogation of Leishman regarding the subject matter

16  of his representation by counsel.

17      196.    The Ogden Murphy Report repeated unreliable and false hearsay as true.

18      197.    The Ogden Murphy Report included numerous material false or misleading

19  statements and omissions.

20      198.    Defendant Attorney General's Office relied on the Ogden Murphy Report

21  as a basis for terminating Leishman.

22  **Multiple senior lawyers at the Attorney General's Office were aware of Hanson's and Esquibel's violations of the Rules of Professional Responsibility**

23      199.    On May 3, 2016, Ms. Phelan sent Defendant Hanson another email

24  regarding the disability accommodation process.

25

200.     In her May 3, 2016 email, Ms. Phelan informed Defendant Hanson that Leishman had "recently been evaluated by a psychiatrist with regard to his medical condition and its impact on his ability to perform his job – and specifically its impact on his interactions with others in the workplace." Ms. Phelan asked Defendant Hanson to forward an "accommodation assessment form to send to the psychiatrist to complete."

201.     On May 3, 2016, Defendant Hanson forwarded a copy of Ms. Phelan's May 3, 2016 email to Defendant Dietrich and to Co-Conspirator LaRose. A copy of Defendant Hanson's May 3, 2016 email is attached as **Exhibit F**.

202.     On Wednesday, May 4, 2016, Defendant Hanson finally responded to repeated inquiries from Leishman's attorney by sending a deceptive email to Ms. Phelan requesting that they schedule a meeting for the following week. A copy of Defendant Hanson's May 4, 2016 email to Ms. Phelan is attached as **Exhibit G**.

203.     Later on May 4, 2016, Ms. Phelan sent an email to Defendant Hanson agreeing to accommodate the Attorney General's Office's scheduling request and meet with Defendant Hanson the following week. Ms. Phelan's email also renewed her request that Defendant Hanson send a copy of the State's preferred disability accommodation form.

204.     After receiving Ms. Phelan's May 4, 2016 email, Defendant Hanson forwarded their May 3, 2016 and May 4, 2016 email correspondence to senior lawyers within the Attorney General's Office, including Defendant Esquibel, Defendant Dietrich, and Defendant Beusch, as well as to Co-Conspirator LaRose. A copy of Defendant Hanson's May 4, 2016 email to her supervisors, including her correspondence with Ms. Phelan, is attached as **Exhibit H**.

205.     No later than May 4, 2016, Defendant Esquibel and other managing lawyers at Defendant Attorney General's Office knew that their investigator had engaged

SECOND AMENDED COMPLAINT - 27

in improper *ex parte* communications with Leishman during the period when he was represented by counsel.

206. Nevertheless, Defendant Attorney General's Office continued to rebuff Ms. Phelan's attempts to communicate with Leishman's employer about the status of his employment and potential accommodations of his disability.

207. Later on May 4, 2016, Defendant Hanson and Co-Conspirator Siebs prepared a letter for Defendant Beusch's signature terminating Leishman's employment.

208. On Thursday, May 5, 2016, Co-Conspirator LaRose informed Leishman the investigation into his sexual orientation discrimination complaint was complete, and summoned him to meet with Defendant Beusch at the Attorney General's Office in Seattle on May 9, 2016, the following Monday.

209. Later on May 5, 2016, Leishman's attorney Ms. Phelan sent an email to Defendant Hanson asking whether the scope of Leishman's upcoming Monday meeting with Defendant Beusch was limited to the investigation into Leishman's sexual orientation discrimination complaint. Ms. Phelan informed Defendant Hanson that "if the purpose of the meeting is also to discuss his performance, his current home assignment and/or any reasonable accommodation, I would like to be present and attend the meeting as well."

210. On May 5, 2016, Defendant Hanson responded to Ms. Phelan with an email, blind-copying Defendant Beusch, Defendant Shinn, and Co-Conspirator Siebs. Defendant Hanson deceptively informed Ms. Phelan "The meeting will be to discuss both the investigation and performance issues." A copy of Defendant Hanson's email is attached as **Exhibit I**.

211. There was no discussion at the Monday, May 9, 2016 meeting. Rather, Defendant Beusch handed Leishman a one sentence letter terminating his employment effective June 1, 2016, together with a copy of the Ogden Murphy Report.

SECOND AMENDED COMPLAINT - 28

**Deceptive amendment to Work Order**

212.     The Work Order authorized Defendant Attorney General's Office to pay OWM up to $7,975 for work spent investigating Leishman's sexual orientation discrimination complaint.

213.     Because Defendant Esquibel directed Co-Conspirator Pearce to instead focus on the Employee Conduct Allegations, by the end of April 2016, Co-Conspirator Pearce had completed $17,462 worth of billable work on the OMW Investigation.

214.     Most of Co-Conspirator Pearce's work on the OMW Investigation did not involve issues related to Leishman's complaint of sexual orientation discrimination or Leishman's allegation that the workplace environment at Defendant Attorney General's Office fostered implicit and explicit homophobia.

215.     As OMW's Billing Member and Supervising Member on the engagement, Co-Conspirator Sutherland knew that most of Co-Conspirator Pearce's work on the OMW Investigation involved the Employee Conduct Allegations rather than Leishman's sexual orientation discrimination complaint.

216.     On May 11, 2016, Co-Conspirator LaRose sent an email to Co-Conspirator Pearce stating "I am working with our contracts staff to get approval for you to submit an invoice taking the total to $10K. Would you please confirm for me that all of your work was completed by May 4?"

217.     On May 12, 2016, after Co-Conspirator Pearce had confirmed that all work was completed by May 4, Defendant Attorney General's Office issued an Amended Work Order that provided an "Amended Dollar Total" increasing the total authorized payment to $10,000.

218.     The Amended Work Order did not change the contractual deliverables or due date.

SECOND AMENDED COMPLAINT - 29

219.     The Amended Work Order provides that "Both the Agency and the Contractor are responsible for ensuring work performed is within the scope of the original Work Order and this Amendment. The Agency must monitor proper compliance with the terms of the original Work Order, this Amendment, and RCW 39.26. Any and all further changes or amendments to the original Work Order must be in writing and acknowledged by the DES/MCC [Department of Enterprise Services/Master Contract] Coordinator."

220.     A copy of the Amended Work Order is attached as **Exhibit J**.

221.     Under the Master Contract and Washington's government contract procurement laws, any Personnel Investigation assignment costing more than $10,000 requires a public bid process.

222.     On May 19, 2016, Co-Conspirator Sutherland sent Co-Conspirator a final invoice that wrote down $7,232.50 of OMW's bill, to a total of $10,000, identified in the invoice as a "Reduction to Conform to Contract."

223.     A copy of Co-Conspirator Sutherland's May 19, 2016 letter and invoice is attached as **Exhibit K**.

**Defendants' continuing efforts to conceal attorney wrongdoing**

224.   On May 31, 2016, Ms. Phelan sent to a letter to Defendant Hanson detailing the Defendant Attorney General's Office's failure to comply with its duties as an employer under the ADA and the WLAD, and asking the Defendant Hanson to respond to a formal settlement proposal.

225.   On June 3, 2016, Defendant Hanson forwarded Ms. Phelan's letter to Chief Deputy Attorney General Esquibel and other managing lawyers at Defendant Attorney General's Office. A copy of Ms. Hanson's June 3, 2016 email to her superiors, which includes Ms. Phelan's May 31, 2016 letter, is attached as **Exhibit L**.

SECOND AMENDED COMPLAINT - 30

226.   On June 6, 2016, Chief Deputy Attorney General Esquibel convened a high-level meeting to discuss Ms. Phelan's May 31, 2016 letter regarding Leishman's disability and termination.

227.   From May 4, 2016 through October 2016, Defendant Attorney General's Office convened multiple high-level secret Damage Control Meetings to address the consequences of Defendant Esquibel's, Defendant Hanson's, and Defendant Attorney General's Office's unlawful response to Leishman's disability, his sexual orientation, and his engagement of counsel.

228.   Defendant Esquibel led the Damage Control Meetings.

229.   Other senior Attorney General's Office attorneys who participated in the Damage Control Meetings include Defendant Beusch, Defendant Dietrich, then-Assistant Attorney General Christopher Lanese, Defendant Petrie, and Defendant Shinn.

230.   Notwithstanding the obligations of supervisory lawyers under the common law, RPC 5.1, and RPC 5.3, no lawyer who knew of Defendant Hanson and Co-Conspirator Pearce's misconduct at a time when its consequences could be avoided or mitigated has ever taken any remedial action.

**Fraudulently induced Settlement Agreement between Leishman and State**.

231.   Defendant Attorney General's Office never responded to Ms. Phelan's May 31, 2016 letter.

232.   On June 14, 2016, Torts Division lawyer Gary Andrews replaced Defendant Hanson as the State's lawyer.

233.   After multiple delays by Defendant Attorney General's Office, the parties eventually agreed to participate in mediation in October 2016.

234.   Despite Leishman's repeated requests during 2016, the Attorney General's Office and the OMW Defendants refused to provide copies of documents related to his

SECOND AMENDED COMPLAINT - 31

termination, including materials specifically identified in the Ogden Murphy Report as the basis of Co-Conspirator Pearce's conclusions about Leishman's workplace conduct and his sexual orientation discrimination complaint.

235.    Prior to the mediation, Defendants intentionally concealed material information from Leishman and his attorney.

236.    On October 18, 2016, Leishman's attorney submitted a copy of a Standard Tort Claim Form ("2016 Tort Claim") to the State. A copy of the 2016 Tort Claim is attached as **Exhibit M**.

237.    The 2016 Tort Claim states "This claim involves legal claims of disability discrimination, failure to accommodate and retaliation." The 2016 Tort Claim does not refer to or involve any other claims.

238.    During the mediation, the parties reached agreement on the terms of a written Settlement Agreement, including an Addendum that was signed in November 2016.

239.    The 2016 Settlement Agreement is limited to Leishman's claims identified in the 2016 Tort Claim.

240.    The Attorney General's Office Defendants fraudulently and wrongfully induced Leishman to enter into the Settlement Agreement.

241.    Under the Settlement Agreement, Leishman released the identified claims against the State, including the Attorney General's Office, and any officers, agents, employees, agencies, or departments of the State of Washington.

**Failure to disclose purported evidence related to Employee Conduct Allegations**

242.    In the Ogden Murphy Report, Co-Conspirator Pearce identified twenty-five documents that he considered for purposes of the OWM Investigation ("OMW Materials Considered List").

ROGER LEISHMAN, ESQ.
PO BOX 2207
BELLINGHAM, WASHINGTON  98227

243.    A copy of the first two sections of the Ogden Murphy Report ("I. Introduction" and "II. Materials Considered") is attached as **Exhibit N**.

244.    The OWM Material Considered List omits evidence related to Leishman's sexual orientation discrimination complaint that Leishman provided to Co-Conspirator Pearce.

245.    The OWM Material Considered List omits other evidence from files maintained by Defendant Attorney General's Office that Leishman identified to Co-Conspirator Pearce as related to Leishman's sexual orientation discrimination complaint.

246.    Nine of the twenty-five items enumerated in the OWM Material Considered List are documents prepared by employees of Defendant Attorney General's Office during 2015 and 2016 that were provided to Co-Conspirator Pearce at the direction of Defendant Esquibel and Defendant Hanson.

247.    Despite Leishman's repeated requests before and after his termination, Defendant Attorney General's Office refused to provide him with copies of the nine items in the OWM Material Considered List referred to in the previous paragraph until compelled under to do so under the Public Records Act in 2017.

**Leishman's separate lawsuit against OMW Defendants**

248.    During Leishman's legal career, he never had the misfortune of encountering a *faux* "independent" third-party personnel investigator.

249.    Leishman believed Co-Conspirator Pearce's description of his role as an objective independent outside professional following the evidence wherever it led.

250.    The Introduction to the Ogden Murphy Report, included in Exhibit N hereto, states that the "investigation was initiated regarding two issues: A) whether Assistant Attorney General Roger Leishman experienced discrimination based on his

SECOND AMENDED COMPLAINT - 33

1   sexual orientation; and B) whether Mr. Leishman conducted himself appropriately in a

2   March 1, 2016 meeting in his office with his supervisor."

3   251.   Based on the representations by Defendant Attorney General's Office and

4   Co-Conspirator Pearce set forth in Paragraphs 135-144, as well as the description of the

5   items in the OWM Material Considered List and the substance of the Ogden Murphy

6   Report, Leishman understood that Pearce himself had initiated the portion of the

7   investigation related to the Employee Conduct Allegations in response to the

8   overwhelming volume of defamatory accusations made by Leishman's co-workers.

9   252.   In January 2017, Leishman contacted Geoffrey Bridgeman, OMW's

10   Managing Member, for the purpose of seeking OMW's assistance in clearing his name.

11   253.   Mr. Bridgeman never responded to Leishman's inquiry. Instead, in April

12   2017 Leishman received a call from Michele Corsi, who represented OWM as outside

13   counsel.

14   254.   Ms. Corsi informed Leishman that OMW and Co-Conspirator Pearce could

15   not assist Leishman because they had a fiduciary attorney-client relationship with the

16   Attorney General's Office, and acted as the State's agent during the OMW Investigation.

17   255.   Ms. Corsi's representation that OMW and Co-Conspirator Pearce had an

18   attorney-client relationship with Defendant Attorney General's Office was false.

19   256.   Ms. Corsi's representation that OMW and Co-Conspirator Pearce acted as

20   the agent of Defendant Attorney General's Office was false.

21   257.   OMW engages in deceptive business practices.

22   258.   Leishman discovered from public documents that OWM routinely accepts

23   payment from government agencies for providing purportedly neutral personnel

24   investigations that are in fact heavily biased in favor of management.

25

SECOND AMENDED COMPLAINT - 34

259.     Attached as **Exhibit O** is a copy of a July 23, 2014 public memorandum regarding Co-Conspirator Pearce's investigation into allegations by and about Judge Patricia Petersen, the Office of the Insurance Commissioner's Chief Hearing Officer. Judge Petersen ultimately settled her wrongful termination claim for $450,000.

260.     Attached as **Exhibit P** is a copy of a November 30, 2016 open letter to UW President Ana Mari Cauce regarding Co-Conspirator Sutherland's investigation into the actions of University of Washington Police Department officers.

261.     On May 10, 2017, Leishman filed a lawsuit in King County Superior Court ("the OMW Lawsuit") against OMW and Co-Conspirator Pearce ("the OMW Defendants").

262.     During the OMW Lawsuit, Defendant Ferguson and Defendant LiaBraaten intentionally obstructed Leishman's efforts to uncover evidence related to his employment and termination.

263.     On November 3, 2017, the trial court granted the OMW Defendants' motion for judgment on the pleadings in the OMW Lawsuits on the grounds that defendants were absolutely immune from any liability under RCW 4.24.510, Washington's anti-SLAPP citizen whistleblower protection statute.

264.     On September 3, 2019, Division One of the Court of Appeals reversed the trial court's ruling in a reported decision, *Leishman v. Ogden Murphy Wallace, PLLC,* 10 Wn.App.2d 826, 451 P.3d 1101 (2019).

265.     On October 3, 2019, OMW and Pearce filed a petition for review in the Washington Supreme Court.

266.     On January 28, 2021, the Washington Supreme Court issued a decision reversing the Court of Appeals.

267.     On February 26, 2021, Leishman filed a Motion for Reconsideration.

ROGER LEISHMAN, ESQ.
PO BOX 2207
BELLINGHAM, WASHINGTON  98227

268.     On March 23, 2021, the Washington Supreme Court directed the OWM Defendants to file an Answer to Leishman's Motion for Reconsideration.

269.     The OMW Lawsuit remains pending in the Washington Supreme Court.

**Leishman's discovery of concealed lawyer misconduct**

270.     In July 2017, Leishman served discovery requests on OWM seeking copies of documents related to the OMW Investigation.

271.     Leishman first learned of Defendants Esquibel's involvement on October 20, 2017, when counsel for OMW belatedly produced a copy of the Investigation Scope Email.

272.     Until October 2017, Leishman had never heard of Defendant Esquibel, and believed that Dave Horn was still Chief Deputy Attorney General.

273.     When the OMW Defendants' lawyers produced the Investigation Scope Email on October 20, 2016, Leishman saw the addressees were Defendant Hanson, Co-Conspirator Siebs, and "shanee@atg.wa.gov."

274.     Leishman figured out Defendant Esquibel's last name from another email in the OMW Defendants' belated document production.

275.     When Leishman googled "Shane Esquibel," he discovered Defendant Esquibel was the new Chief Deputy Attorney General. Defendant Esquibel was quoted with his title in a March 29, 2017 article in the Everett Herald about the recent spoliation of documents in the Oso mudslide litigation by Defendant Attorney General's Office.

276.     In response to Leishman's subsequent requests under the Public Records Act, Defendant Attorney General's Office eventually produced multiple emails and other contemporaneous records documenting violations of the Rules of Professional Conduct and other misconduct by lawyers employed by the Attorney General's Office.

SECOND AMENDED COMPLAINT - 36

**Bar grievances against Defendant Esquibel and Defendant Hanson**

277.    On December 18, 2018, Leishman filed bar grievances against Defendant Esquibel and Defendant Hanson alleging violations of RPC 4.2, RPC 5.1, RPC 5.3, and RPC 8.4.

278.    A copy of the bar grievance against Defendant Hanson is attached as **Exhibit Q**.

279.    When individual attorneys employed by the State violate provisions of the Rules of Professional Responsibility, they are subject to the same disciplinary procedures as other members of the bar, and must defend themselves at their own expense. The Washington Constitution and longstanding statutory provisions prohibit lawyers from the Washington Attorney General's Office from expending public resources to defend state officers and employees accused of ethical violations. *See, e.g.*, *Sanders v. State*, 166 Wn.2d 164, 207 P.3d 1245 (2010).

280.    Nevertheless, Defendant LiaBraaten appeared in the disciplinary proceedings, at taxpayer expense, on behalf of her superior Defendant Esquibel and her co-worker Defendant Hanson.

281.    In a "Preliminary Response" dated January 18, 2019, Defendant LiaBraaten falsely represented to the Office of Disciplinary Counsel that "the reasonable accommodation process was put on hold" from March 2016 to May 2016 – the same period when Leishman's attorney Ms. Phelan was attempting to communicate with Defendant Hanson about Leishman's disability and potential employer accommodations.

282.    At the request of Defendant LiaBraaten and Defendant Attorney General's Office, the Office of Disciplinary Counsel deferred any further investigation into the bar grievances against Deputy Attorney General Esquibel and Assistant Attorney General Hanson pursuant to ELC 5.3(d)(1)(A).

SECOND AMENDED COMPLAINT - 37

283.    While the Office of Disciplinary Counsel's deferral decision was pending before a Review Committee of the Disciplinary Board, Leishman submitted additional evidence he had obtained in response to multiple requests under the Public Records Act, summarized in a "RPC 4.2 Violation Timeline" dated October 21, 2019. A copy of the RPC 4.2 Violation Timeline is attached as **Exhibit R**.

284.    Despite numerous opportunities to do so, no Defendant or Co-Conspirator has ever identified any evidence rebutting the RPC 4.2 violation allegations set forth in Exhibit R.

285.    Over Leishman's objection, the bar grievances against Defendant Esquibel and Defendant Hanson remain deferred pending the final resolution of the OMW Lawsuit.

**Defendants' expenditure of public resources for private benefit.**

286.    After lawyers from Defendant Attorney General's Office appeared on behalf of Defendant Esquibel and Defendant Hanson in their lawyer disciplinary proceedings, Leishman submitted requests to the Attorney General's Office under the Public Records Act seeking copies of documents related to the expenditure of public resources for the private benefit of Defendant Esquibel and Defendant Hanson in their individual lawyer discipline matters.

287.    In response to Leishman's Public Records Act requests, the Attorney General's Office produced timekeeper summaries and billing invoices documenting the expenditure of thousands of tax dollars for the private benefit of Defendant Esquibel and Defendant Hanson by Defendant Ferguson, Defendant LiaBraaten, and Special Assistant Attorney General Mark Fucile, the Attorney General's Ethics Advisor.

**Spoliation and concealing of evidence**

288.    On May 22, 2017, Leishman a served a request to Defendant Attorney General's Office under the Public Records Act, which was given the designation PRR-

SECOND AMENDED COMPLAINT - 38

1    2017-00270.

2          289.    PRR-2017-00270 sought public records related to Leishman's employment

3    and termination, the OMW Investigation, and the relationship between OMW and the

4    Attorney General's Office.

5          290.    LaDona Jensen ("Co-Conspirator Jensen") is the Director of Public

6    Records & Constituent Services at the Attorney General's Office.

7          291.    Co-Conspirator Jensen's supervisor is Defendant Beusch.

8          292.    Co-Conspirator Jensen acted as the agent of Defendant Attorney General's

9    Office at all times relevant herein.

10         293.    On October 31, 2017, together with a final delivery of documents totaling

11   1,455 pages, Co-Conspirator Jensen represented to Leishman that Defendant Attorney

12   General's Office had produced all public records responsive to PRR-2017-00270.

13         294.    The Investigation Scope Email was responsive to PRR-2017-00270.

14         295.    Defendant Attorney General's Office failed to produce the Investigation

15   Scope Email in response to PRR-2017-00270.

16         296.    In response to PRR-2017-00270, Defendant Attorney General's Office also

17   failed to produce any other document referring to or responding to the Investigation Scope

18   Email.

19         297.    Defendant Attorney General's Office's handling of PRR-2017-00270

20   violated the Public Records Act.

21         298.    On December 5, 2017, Leishman a served request to Defendant Attorney

22   General's Office under the Public Records Act, which was given the designation PRR-

23   2017-00740.

24         299.    PRR-2017-00740 sought enumerated public records, including records

25   provided to Co-Conspirator Pearce for purpose of his consideration in the course of the

SECOND AMENDED COMPLAINT - 39

OMW Investigation; all investigator notes prepared in the course of the OMW

Investigation; and all records related to the March 11, 2016 telephone conference among

Defendant Esquibel, Defendant Hanson, Co-Conspirator Siebs, and Co-Conspirator

Pearce referred to in the Investigation Scope Email.

300.    On January 23, 2018, Co-Conspirator Jensen produced 157 pages of

documents and represented to Leishman that Defendant Attorney General's Office had

produced all public records responsive to PRR-2017-0740.

301.    The Investigation Scope Email was responsive to PRR-2017-0740.

302.    Nevertheless, Defendant Attorney General's Office failed to produce the

Investigation Scope Email in response to PRR-2017-0740.

303.    In response to PRR-2017-00740, Defendant Attorney General's Office also

failed to produce any other document referring to or responding to the Investigation Scope

Email.

304.    Defendant Attorney General's Office's handling of PRR-2017-0740

violated the Public Records Act.

305.    On January 18, 2019, purportedly in support of her representation that the

reasonable accommodation process was "on hold" during Spring 2016, Defendant

LiaBraaten filed a copy of a March 16, 2016 email from Defendant Hanson as

Attachment 3 to Respondents' Preliminary Response to Leishman's bar grievances

("Hanson Response Email").

306.    A copy of the Hanson Response Email is attached as **Exhibit S**.

307.    Prior to receiving a copy of Respondents' Preliminary Response from the

Office of Disciplinary Counsel in January 2019, Leishman had never seen any reference

to the Hanson Response Email.

308.    The Hanson Response Email was responsive to PRR-2017-00270.

SECOND AMENDED COMPLAINT - 40

309.    The Hanson Response Email was responsive to PRR-2017-0740.

310.    The Hanson Response Email was responsive to Leishman's discovery requests to OWM and Co-Conspirator Pearce in the OMW lawsuit.

311.    In 2019, Leishman submitted multiple new Public Records Act requests to Defendant Attorney General's Office, again seeking identified public records related to the OWM Investigation.

312.    In response to Leishman's 2019 Public Records Act requests, Defendant Attorney General's Office finally produced multiple documents related to the Investigation Scope Email that had not previously been produced by either Defendant Attorney General's Office or the OMW Defendants.

313.    Documents produced by Co-Conspirator Jensen included Co-Conspirator Pearce's answer to the Hanson Response Email (attached as **Exhibit T**) and Co-Conspirator Siebs' response to the Investigation Scope Email, which states that she "will defer to Shane and/or Kari as to the scope of the investigation" (attached as **Exhibit U**).

314.    The Investigation Scope Email itself is responsive to multiple Public Records Act requests submitted to Defendant Attorney General's Office.

315.    Nevertheless, Defendant Attorney General's Office has failed to produce *any* version of the Investigation Scope Email itself, including the copy of the email received by Defendant Esquibel on March 16, 2016; the copy of the email received by Defendant Hanson on March 16, 2016; the copy of the email received by Co-Conspirator Siebs on March 16, 2016; and the copy of the email provided to Defendant LiaBraaten during discovery in the OMW lawsuit.

316.    Defendant Attorney General's Office has failed to produce other public records identified by Leishman in requests submitted under the Public Records Act.

317.    Defendant Attorney General's Office, Defendant LiaBraaten, Defendant Ferguson, and OMW have repeatedly attempted to prevent tribunals and members of the public from gaining access to the Investigation Scope Email and other material evidence.

318.    Defendant Attorney General's Office has concealed or destroyed other material evidence.

319.    Co-Conspirator Pearce and Co-Conspirator Sutherland have concealed or destroyed material evidence.

320.    In Spring 2016, Defendant Shepard directed employees of Defendant WWU to destroy material evidence related to Leishman.

321.    Defendant Shepard and Defendant WWU have concealed or destroyed other material evidence.

322.    On September 20, 2019, Defendant Purcell asked the Washington Court of Appeals to alter its published opinion in the OMW Lawsuit for the purpose of concealing allegations regarding misconduct by Co-Conspirator Higgins and Defendant Attorney General's Office.

323.    On April 24, 2020, Defendant Purcell asked the Washington Supreme Court for leave to file an amicus brief in the OMW Lawsuit for the purpose of concealing misconduct by Defendant Attorney General's Office.

324.    In response to Leishman's requests under the Public Records Act, Defendant Attorney General's Office has improperly withheld documents under the attorney-client privilege and work product doctrine.

325.    Defendant Attorney General's Office assertions of the attorney-client privilege and work product doctrine are precluded by the crime-fraud exception.

326.    Defendant Office of the Governor has refused to respond to Leishman's requests filed under the Public Records Act.

SECOND AMENDED COMPLAINT - 42

**Executive Ethics Board complaints against AGO Defendants**

327.     Under the Ethics in Public Service Act, if individuals believe that a state officer or state employee has engaged in activities that are in violation of the state ethics, they may file a complaint with the Executive Ethics Board.

328.     On February 25, 2020, Leishman submitted ethics complaints against Defendant Esquibel and Defendant Hanson contending their unauthorized receipt of public resources in connection with the lawyer disciplinary proceedings violated RCW 42.52.160(1).

329.     Leishman also submitted ethics complaints against three individuals who illegally expended public resources for Esquibel's and Hanson's private benefit: Defendant Ferguson, Defendant LiaBraaten, and Special Assistant Attorney General Marc Fucile.

330.     A copy of the ethics complaint against Defendant Ferguson is attached as **Exhibit V**.

331.      Although the Washington Executive Ethics Board is a separate executive branch agency, the Executive Ethics Board is housed within the Washington Attorney General's Office, and is staffed by employees of Defendant Attorney General's Office. Defendant Kate Reynolds, the Executive Director of the Washington State Executive Ethics Board, is supervised by Defendant Noah Purcell.

332.     Despite the plain language of the Ethics in Public Service Act and its implementing regulations, Defendant Reynolds refused to accept for filing Leishman's complaints alleging violations of the Ethics in Public Service Act by Reynolds' co-workers in the Washington Attorney General's Office.

ROGER LEISHMAN, ESQ.
PO BOX 2207
BELLINGHAM, WASHINGTON  98227

**Conflicts of interest**

333.    Leishman filed a Notice of Claim pursuant to the State's tort claim process on February 18, 2020.

334.    On March 11, 2020, Defendant Office of Risk Management sent Leishman a letter stating it had "assigned investigation of the claim to the Torts Division of the Attorney General's Office." A copy of the March 11, 2020 letter is attached as **Exhibit W** hereto.

335.    On March 19, 2020, Leishman sent a letter to Defendant Purcell, who serves as the Attorney General's general counsel, informing him that "obvious conflicts of interest preclude the Torts Division from participating in this matter." A copy of Leishman's March 19, 2020 letter is attached as **Exhibit X** hereto.

336.    Defendants never responded to Leishman's March 19, 2020 letter.

337.    Instead, in a letter dated April 9, 2020, the Attorney General's Torts Division informed Leishman there would be no investigation, and "any further action to pursue this claim will be your responsibility." A copy of Defendant Attorney General's Office's April 9, 2020 letter is attached as **Exhibit Y** hereto.

338.    On April 17, 2020, Leishman sent a letter to Jason Siems, the State Risk Manager, alerting Defendant ORM to the clear failure of the State's public accountability systems in this matter. Leishman asked Mr. Siems to take this opportunity to investigate his claim objectively, rather than requiring Leishman to move forward with a lawsuit as required by the tort claims statute. A copy of Leishman's April 17, 2020 letter is attached as **Exhibit Z** hereto.

339.    Defendants never responded to Leishman's April 17, 2020 letter.

340.    On October 2, 2020, Leishman filed a Supplemental Notice of Claim.

SECOND AMENDED COMPLAINT - 44

**Pending Mandamus action**

341.     After Defendant Reynolds refused to accept for filing the Executive Ethics Board complaints Leishman submitted on February 25, 2020, Leishman unsuccessfully attempted to address Reynolds' stated concerns.

342.     On June 30, 2020, Leishman filed an action against Defendant Reynolds in King County Superior Court seeking a Writ of Mandamus.

343.     On August 12, 2020, the court granted Defendant Reynolds' motion to transfer venue to Thurston County under RCW 4.12.020.

344.     The Mandamus action is currently pending in Division One of the Washington Court of Appeals.

**Defendants' continuing violations of Leishman's rights**

345.     Since October 20, 2017, Leishman has diligently attempted to uncover the full extent of Defendants' wrongdoing, including through requests under the Public Records Act.

346.     Defendants have repeatedly attempted to conceal their wrongdoing.

347.     Defendants have expended thousands of dollars in public resources in their efforts to postpone scrutiny and evade responsibility for their misconduct.

348.     Defendants' conduct exacerbated Leishman's disability symptoms and caused substantial distress to him and his family.

349.     During a substantial portion of the period from November 2016 to January 2020, Leishman was incapacitated by his disability, including by the injuries Defendants caused.

350.     Both before and after November 2016, Defendants interfered with Leishman's efforts to gain suitable employment and to revive his professional career.

ROGER LEISHMAN, ESQ.
PO BOX 2207
BELLINGHAM, WASHINGTON  98227

351.     Both before and after November 2016, Defendants interfered with Leishman's efforts to discover the true circumstances of his wrongful termination and to petition the government for redress.

352.     Each Defendant employed by Defendant Attorney General's Office acted with the knowledge and approval of Washington Attorney General Bob Ferguson.

## V.  GASLIGHTING CONSPIRACY

353.     Plaintiff Leishman repeats and re-alleges the allegations in all preceding paragraphs as if fully set forth herein.

354.     The term "gaslighting" comes from the title of classic film where an abusive husband took dishonest and authoritarian actions that made his wife believe she was going crazy.

355.     Gaslighting is a substandard practice, regardless of the identity of the employee or other victim.

356.     Gaslighting is particularly abusive when the employee or other victim happens to have a disability involving mental illness.

357.     Because of the nature of Leishman's underlying traumas, gaslighting tactics cause Leishman to suffer debilitating PTSD symptoms.

358.     In August 2015, Leishman, Defendant Shinn, and Co-Conspirator Higgins executed a written Performance and Development Plan ("PDP") that identified specific performance expectations for the period from July 13, 2015 through August 31, 2016.

359.     From October 2015 through March 7, 2016, Defendant Attorney General's Office repeatedly delayed Leishman's PDP review and performance evaluation process.

360.     Rather than conduct Leishman's performance and evaluation in accordance with due process and the policies and procedures adopted by Defendant Attorney General's Office, Defendant Shinn instead directed Co-Conspirator Reyes, Co-

SECOND AMENDED COMPLAINT - 46

Conspirator Higgins, and other employees to prepare detailed notes regarding Leishman's conduct ("Secret Files").

361.   Defendant Shinn also prepared additional Secret Files himself.

362.   As identified in the OMW Material Considered List, Defendant Attorney General's Office provided excerpts from the Secret Files to Co-Conspirator Pearce.

363.   No later than October 15, 2015, Defendant Shinn, Defendant Shepard, Co-Conspirator Reyes, and Co-Conspirator Higgins combined for the purpose of accomplishing the purpose of terminating Leishman's employment by unlawful means ("the Gaslighting Conspiracy").

364.   No later than October 15, 2015, Defendant Shinn, Defendant Shepard, Defendant Attorney General's Office, Defendant WWU, Co-Conspirator Reyes, and Co-Conspirator Higgins entered into an agreement to accomplish the Gaslighting Conspiracy.

365.   Concealment is one of the main objectives of the Gaslighting Conspiracy.

366.   The Gaslighting Conspiracy's unlawful means include violating the Public Records Act and other legal prohibitions on concealing or spoliating material evidence.

367.   The Gaslighting Conspiracy's unlawful means include depriving Leishman of the due process guaranteed to all public employees.

368.   The Gaslighting Conspiracy's unlawful means include violating the laws prohibiting discrimination on the basis of sexual orientation.

369.   No later than January 7, 2016, Defendant Esquibel, Defendant Hanson, Defendant Beusch, and Co-Conspirator Siebs agreed to join the Gaslighting Conspiracy.

370.   Defendant Esquibel, Defendant Hanson, Defendant Beusch, and Co-Conspirator Siebs ratified all prior acts by the Gaslighting Conspiracy co-conspirators.

371.   No later than March 3, 2016, Defendant Dietrich agreed to join the Gaslighting Conspiracy.

ROGER LEISHMAN, ESQ.
PO BOX 2207
BELLINGHAM, WASHINGTON  98227

372.     Defendant Dietrich ratified all prior acts by the Gaslighting Conspiracy co-conspirators.

373.     No later than March 4, 2016, Co-Conspirator LaRose agreed to join the Gaslighting Conspiracy.

374.     Co-Conspirator LaRose ratified all prior acts by the Gaslighting Conspiracy co-conspirators.

375.     No later than March 11, 2016, Co-Conspirator Pearce agreed to join the Gaslighting Conspiracy.

376.     Co-Conspirator Pearce ratified all prior acts by the Gaslighting Conspiracy co-conspirators.

377.     No later than April 21, 2016, Co-Conspirator Skinner and Co-Conspirator Sutherland agreed to join the Gaslighting Conspiracy.

378.     Co-Conspirator Skinner and Co-Conspirator Sutherland ratified all prior acts by the Gaslighting Conspiracy co-conspirators.

379.     No later than June 3, 2016, Defendant Petrie agreed to join the Gaslighting Conspiracy.

380.     Defendant Petrie ratified all prior acts by the Gaslighting Conspiracy co-conspirators.

381.     No later than June 8, 2017, Defendant Ferguson and Defendant LiaBraaten agreed to join the Gaslighting Conspiracy.

382.     Defendant Ferguson and Defendant LiaBraaten ratified all prior acts by the Gaslighting Conspiracy co-conspirators.

383.     No later than January 23, 2018, Co-Conspirator Jensen agreed to join the Gaslighting Conspiracy.

ROGER LEISHMAN, ESQ.
PO BOX 2207
BELLINGHAM, WASHINGTON  98227

384.    Co-Conspirator Jensen ratified all prior acts by the Gaslighting Conspiracy co-conspirators.

385.    No later than July 17, 2019, Defendant Purcell and Defendant Reynolds agreed to join the Gaslighting Conspiracy.

386.    Defendant Purcell and Defendant Reynolds ratified all prior acts by the Gaslighting Conspiracy co-conspirators.

387.    No later than April 22, 2020, Defendant Office of Risk Management agreed to join the Gaslighting Conspiracy.

388.    Defendant Office of Risk Management ratified all prior acts by the Gaslighting Conspiracy co-conspirators.

389.    No later than May 1, 2020, Defendant Office of the Governor agreed to join the Gaslighting Conspiracy.

390.    Defendant Office of the Governor ratified all prior acts by the Gaslighting Conspiracy co-conspirators.

391.    Other acts in furtherance of the Gaslighting Conspiracy are identified in Paragraphs 46-47, 49-52, 63-64, 67-69, 71-72, 77-78, 81-90, 113, 115-19, 137-53, 155, 160-63, 167-68, 170-72, 176-77, 181, 185-98, 201-04, 206-10, 216-18, 222, 225-31, 234-35, 244-47, 262, 271, 280-82, 284, 287, 294-304, 315-26, 332, 336-39, 346-47, and 350-51.

392.    Each Defendant Co-Conspirator in the Gaslighting Conspiracy is vicariously liable for the acts and omissions of each other co-conspirator.

393.    Defendant Attorney General's Office is vicariously liable for the acts and omissions of its agents.

394.    Defendant WWU is vicariously liable for the acts and omissions of its agents.

ROGER LEISHMAN, ESQ.
PO BOX 2207
BELLINGHAM, WASHINGTON 98227

1    395.    Some objectives of the Gaslighting Conspiracy have yet to be

2  accomplished.

3    396.    None of the co-conspirators has abandoned the Gaslighting Conspiracy.

4              **VI. FIRST CLAIM FOR RELIEF – SECTION 1983**

5    397.    Plaintiff Leishman repeats and re-alleges the allegations in all preceding

6  paragraphs as if fully set forth herein.

7    398.    Acting under color of state law, each individual Defendant violated and

8  caused violations of Leishman's clearly established petition rights, due process, and equal

9  protection rights guaranteed by the First and Fourteenth Amendments to the United States

10  Constitution.

11    399.    Acting under color of state law, each individual Defendant violated and

12  caused violations of Leishman's clearly established federal civil rights.

13    400.    Defendants' acts were intentional, malicious, willful, wanton, obdurate,

14  and in gross and reckless disregard of Leishman's constitutional and civil rights.

15            **VII. SECOND CLAIM FOR RELIEF – SECTION 1985(3)**

16    401.    Plaintiff Leishman repeats and re-alleges the allegations in all preceding

17  paragraphs as if fully set forth herein.

18    402.    In addition to engaging in a civil conspiracy under Washington law, the

19  individual participants in the Gaslighting Conspiracy also violated 42 U.S.C. § 1985(3).

20    403.    No later than March 11, 2016, Defendant Shinn, Defendant Beusch,

21  Defendant Esquibel, Defendant Hanson, Defendant Dietrich, Co-Conspirator Siebs, Co-

22  Conspirator LaRose, and Co-Conspirator Pearce combined for the purpose of depriving

23  Leishman of equal the protection of the laws and equal privileges and immunities under

24  the laws ("the Section 1985 Conspiracy").

25

ROGER LEISHMAN, ESQ.
PO BOX 2207
BELLINGHAM, WASHINGTON  98227

404.     Defendant Petrie, Defendant Ferguson, Defendant LiaBraaten, Defendant Purcell, Defendant Reynolds, Co-Conspirator Skinner, and Co-Conspirator Sutherland each agreed to join the Section 1985 Conspiracy on or before the dates set forth in the previous section with respect to their joining the Gaslighting Conspiracy.

405.     Upon joining the Section 1985 Conspiracy, Defendant Petrie, Defendant Ferguson, Defendant LiaBraaten, Defendant Purcell, Defendant Reynolds, Co-Conspirator Skinner, and Co-Conspirator Sutherland each ratified all prior acts by the Section 1985 Co-Conspirators.

406.     The Section 1985 Co-Conspirators deprived Leishman of clearly established equal protection rights as a gay man.

407.     The Section 1985 Co-Conspirators deprived Leishman of his clearly established First Amendment petition rights.

408.     The Section 1985 Co-Conspirators deprived Leishman of clearly established due process rights.

409.     Other acts in furtherance of the Section 1985 Conspiracy are identified above in Paragraphs 46-47, 49-52, 63-64, 67-69, 71-72, 77-78, 81-90, 113, 115-19, 137-53, 155, 160-63, 167-68, 170-72, 176-77, 181, 185-98, 201-04, 206-10, 216-18, 222, 225-31, 234-35, 244-47, 262, 271, 280-82, 284, 287, 294-304, 315-26, 332, 336-39, 346-47, and 350-51.

410.     The Section 1985 Co-Conspirators acts were intentional, malicious, willful, wanton, obdurate, and in gross and reckless disregard of Leishman's constitutional and civil rights.

411.     Some objectives of the Section 1985 Conspiracy have yet to be accomplished.

412.     None of the co-conspirators has abandoned the Section 1985 Conspiracy.

ROGER LEISHMAN, ESQ.
PO BOX 2207
BELLINGHAM, WASHINGTON  98227

## VIII. THIRD CLAIM FOR RELIEF – DISCRIMINATION BASED ON SEXUAL ORIENTATION

413.    Plaintiff Leishman repeats and re-alleges the allegations in all preceding paragraphs as if fully set forth herein.

414.    Each Defendant discriminated against Leishman on the basis of his sexual orientation.

415.    Defendants' discriminatory conduct proximately caused injury to Leishman.

## IX. FOURTH CLAIM FOR RELIEF – NEGLIGENCE

416.    Plaintiff Leishman repeats and re-alleges the allegations in all preceding paragraphs as if fully set forth herein.

417.    Each individual or institutional Defendant's conduct breached the applicable standard of care.

418.    The conduct of the Gaslighting Conspiracy co-conspirators breached the applicable standard of care.

419.    The supervision of junior lawyers and the assigned investigator by Defendant Washington Attorney General's Office, Defendant Esquibel, Defendant Beusch, Defendant Dietrich, Defendant LiaBraaten, Defendant Petrie, and Defendant Shinn breached the applicable standard of care.

420.    Defendants' conduct proximately caused injury to Leishman.

## X. FIFTH CLAIM FOR RELIEF – INFLICTION OF EMOTIONAL DISTRESS

421.    Plaintiff Leishman repeats and re-alleges the allegations in all preceding paragraphs as if fully set forth herein.

422.    Each Defendant's conduct individually caused Leishman to suffer emotional distress.

ROGER LEISHMAN, ESQ.
PO BOX 2207
BELLINGHAM, WASHINGTON  98227

423.    The conduct of the Gaslighting Conspiracy co-conspirators caused Leishman to suffer emotional distress.

424.    Leishman's physical symptoms of emotional distress included nervousness, insomnia, hyper-vigilance, stomach upset, bruxism, and Body-Focused Repetitive Behaviors.

425.    Leishman's symptoms constitute a diagnosable disorder susceptible to medical diagnosis.

426.    Leishman's emotional distress exhibited objective symptomology.

427.    Any utility associated with the conduct of Defendant Attorney General's Office as Leishman's employer was outweighed by the conduct's risk of harm.

428.    Defendants' conduct was extreme and outrageous.

429.    Defendants intentionally, recklessly, knowingly, and negligently inflicted Leishman's emotional distress.

## XI. SIXTH CLAIM FOR RELIEF – MISREPRESENTATION

430.    Plaintiff Leishman repeats and re-alleges the allegations in all preceding paragraphs as if fully set forth herein.

431.    Defendants and their Co-Conspirators made the material representations and omissions identified in Paragraphs 67-69, 71, 91, 135, 137, 141-43, 156, 163, 172, 177, 202, 210, 254, and 293.

432.    Leishman reasonably relied on each of the identified misrepresentations and omissions.

433.    Defendants' misrepresentations and omissions injured Leishman.

434.    Each Defendant Co-Conspirator in the Gaslighting Conspiracy is vicariously liable for the misrepresentations and omissions of each other co-conspirator.

SECOND AMENDED COMPLAINT - 53

## XII. SEVENTH CLAIM FOR RELIEF – RETALIATION & DISCRIMINATION

435.    Plaintiff Leishman repeats and re-alleges the allegations in all preceding paragraphs as if fully set forth herein.

436.    Since October 2017, Leishman has repeatedly applied for positions at Defendant WWU for which he was eminently qualified, including "LGBTQ+ Director," "Title IX Coordinator," "Disability Access Manager," "Manager, Equal Opportunity Programs," and "Executive Director – Office of Civil Rights."

437.    Since October 2019, Leishman has repeatedly applied for positions with Defendant Office of the Governor for which he was eminently qualified.

438.    In response to these applications, Leishman has yet to receive a single interview invitation from Defendant WWU or from Defendant Office of the Governor.

439.    Defendant WWU and Defendant Office of the Governor have violated provisions of Washington and federal law that prohibit employers from considering conduct related to a candidate's disability, and from retaliating on the basis of a candidate's exercise of rights under the ADA and the WLAD.

### XIX.  REASONABLE ACCOMMODATION PROCESS "ON HOLD" CONSPIRACY

440.    Plaintiff Leishman repeats and re-alleges the allegations in all preceding paragraphs as if fully set forth herein.

441.    In releasing his "legal claims of disability discrimination, failure to accommodate and retaliation" under the 2016 Settlement Agreement, Leishman did not release any of the claims set forth above in his First through Seventh Claims For Relief.

442.    This Second Amended Complaint is not intended to assert any retaliation claim for conduct occurring before December 2017, any claim for disability discrimination occurring before December 2017, or any claim for Defendant Attorney General's Office and Defendant Beusch's refusal to agree to the specific disability

ROGER LEISHMAN, ESQ.
PO BOX 2207
BELLINGHAM, WASHINGTON  98227

accommodation Leishman initially requested.

443.    Leishman's Eighth Claim for Relief, *infra*, is limited to asserting a claim based on the unlawful obstruction of his employer's participation in a good faith interactive reasonable accommodation dialogue both with Leishman himself and with the employment attorney Leishman eventually hired for that specific purpose.

444.    To the extent the Court determines the Eighth Claim for Relief is covered by the 2016 Settlement Agreement, Leishman asks the Court to rescind or reform the Agreement.

445.    No later than February 23, 2016, Defendant Beusch, Defendant Esquibel, Defendant Shinn, Defendant Attorney General's Office and Co-Conspirator Siebs combined for the unlawful and discriminatory purpose of preventing Leishman and his employer from engaging in the good faith interactive reasonable accommodation process guaranteed by the ADA and the WLAD ("the Reasonable Accommodation 'On Hold' Conspiracy").

446.    No later than February 23, 2016, Defendant Beusch, Defendant Esquibel, Defendant Shinn, and Co-Conspirator Siebs entered into an agreement to accomplish the Reasonable Accommodation "On Hold" Conspiracy.

447.    Concealment is one of the main objectives of the Reasonable Accommodation "On Hold" Conspiracy.

448.    Defendant Dietrich, Defendant Petrie, Defendant Ferguson, Defendant LiaBraaten, Defendant Ferguson, Defendant Reynolds, Defendant ORM, Defendant Office of the Governor, Co-Conspirator LaRose, Co-Conspirator Pearce, Co-Conspirator Skinner, Co-Conspirator Sutherland, and Co-Conspirator Jensen each agreed to join the Reasonable Accommodation "On Hold" Conspiracy no later than the dates enumerated in Section V with respect to their joining the Gaslighting Conspiracy.

ROGER LEISHMAN, ESQ.
PO BOX 2207
BELLINGHAM, WASHINGTON  98227

449.     Upon joining the Reasonable Accommodation "On Hold" Conspiracy, Defendant Dietrich, Defendant Petrie, Defendant Ferguson, Defendant Lia Braaten, Defendant Ferguson, Defendant Reynolds, Defendant ORM, Defendant Office of the Governor, Co-Conspirator LaRose, Co-Conspirator Pearce, Co-Conspirator Skinner, Co-Conspirator Sutherland, and Co-Conspirator Jensen each ratified all prior acts by the Reasonable Accommodation "On Hold" Co-Conspirators.

450.     Acts in furtherance of the Reasonable Accommodation "On Hold" Conspiracy are identified in Paragraphs 67-71, 77-78, 81-90, 93, 115-19, 135-43, 155-56, 160-72, 176-77, 181-98, 201-11, 216-18, 222, 225-235, 240, 246-47, 254, 262, 280-82, 284-85, 287, 283-310, 315-26, 332, 336-39, 346-47, and 350-51.

451.     Each Defendant Co-Conspirator in the Reasonable Accommodation "On Hold" Conspiracy is vicariously liable for the acts and omissions of each other co-conspirator.

452.     Defendant Attorney General's Office is vicariously liable for the acts and omissions of its agents in connection with the Reasonable Accommodation "On Hold" Conspiracy.

453.     Some objectives of the Reasonable Accommodation "On Hold" Conspiracy have yet to be accomplished.

454.     None of the co-conspirators has abandoned the Reasonable Accommodation "On Hold" Conspiracy.

### XIV. EIGHTH CLAIM FOR RELIEF – FAILURE TO ENGAGE IN DISABILITY REASONABLE ACCOMMODATION PROCESS

455.     Plaintiff Leishman repeats and re-alleges the allegations in all preceding paragraphs as if fully set forth herein.

456.     The acts and omissions of the Reasonable Accommodation "On Hold" Co-

SECOND AMENDED COMPLAINT - 56

Conspirators injured Leishman.

457.    The acts and omissions of the Reasonable Accommodation "On Hold" Co-Conspirators' acts and omissions violated the ADA and the WLAD.

458.    In addition to engaging in a civil conspiracy under Washington law, the individual Defendants participating in the Reasonable Accommodation "On Hold" Conspiracy also violated 42 U.S.C. § 1985(3).

## XV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Roger Leishman respectfully prays for the following relief:

459.    Entry of a money judgment jointly and severally against Defendants in an amount to be proved at trial, and in any event no less than $5,000,000.

460.    An order finding that Defendants and their co-conspirators engaged in the Gaslighting Conspiracy.

461.    An order finding that Defendants and their co-conspirators engaged in the Accommodation Process "On Hold" Conspiracy.

462.    Rescission or reformation of the 2016 Settlement Agreement and Release as deemed appropriate by the Court to the extent required by Leishman's Seventh Claim for Relief.

463.    An award of Leishman's reasonable attorney's fees, expenses and costs, to the fullest extent allowed by law and equity; and

464.    Any further relief as this Court may deem necessary and proper.

DATED this 26th day of April, 2021.

 */s/ Roger A. Leishman*
Roger A. Leishman, WSBA # 19971
*Pro se*

ROGER LEISHMAN, ESQ.
PO BOX 2207
BELLINGHAM, WASHINGTON  98227