1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROGER A. LEISHMAN, | CASE NO. 2:20-cv-861 |
| Plaintiff, | |
| v. | ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS |
| WASHINGTON ATTORNEY GENERAL'S OFFICE; SHANE ESQUIBEL; ELIZABETH CHRISTINA BEUSCH; ALLYSON JANAY FERGUSON; KARI HANSON; SUZANNE LIABRAATEN; VALERIE PETRIE; KATHRYN NADINE REYNOLDS; WESTERN WASHINGTON UNIVERSITY; BRUCE SHEPARD; OFFICE OF THE GOVERNOR; OGDEN MURPHY WALLACE, PLLC; KAREN SUTHERLAND; and PATRICK PEARCE, | |
| Defendants. | |

## 1. INTRODUCTION

This is an employment and civil rights lawsuit. It stems from Plaintiff Roger Leishman's firing from the Washington Attorney General's Office and its aftermath. In sum, Leishman alleges the Attorney General's Office and several of his former colleagues discriminated and retaliated against him, and that they, along with the

1  State's outside employment investigators and others violated his civil rights and

2  subjected him to other unlawful conduct. Before the Court is the State Defendants[1]

3  second motion to dismiss Leishman's complaint for failure to state a claim. Dkt. No.

4  146. As explained more fully below, the Court GRANTS their motion.

## 2.  BACKGROUND

### 2.1  Factual background.

On July 14, 2015, the Attorney General's Office hired Leishman to serve as

the Chief Legal advisor to Western Washington University. Dkt. No. 133 at 5.

Shortly after he began working, Leishman disclosed to the Attorney General's Office

that he was experiencing "serious Body-Focused Repetitive Behaviors (including

trichotillomania), anxiety, bruxism, insomnia, and other physical and mental

symptoms." *Id.* at 5. Leishman's physician later diagnosed him with Post-Traumatic

Stress Disorder and serious codependency. *Id.* at 6. His symptoms affected his

behavior at work, including his interactions with his coworkers. *Id.* at 6–7.

In late January 2016, Leishman submitted a formal workplace disability

accommodation request, but the Attorney General's Office denied his request. *Id.* at

9, 11.

About a month later, and separate from his accommodation request,

Leishman filed a formal sexual orientation discrimination complaint. *Id.* at 12. He

---

[1] Throughout this order, the Court refers collectively to these persons and entities
as the "State Defendants": Washington State Attorney General's Office, Shane
Esquibel, Elizabeth Christina Beusch, Allyson Janay Ferguson, Kari Hanson,
Suzanne LiaBraaten, Valerie Petrie, Katherine Nadine Reynolds, Western
Washington University (WWU), Bruce Shepard, and the Office of the Governor.

1   alleged that his supervisor had made "homophobic allegations" against him and

2   wrongfully withheld a $3,000 raise, which were part of a pattern of "implicit and

3   explicit workplace homophobia." *Id.* at 12.

4        Several days after he submitted his discrimination complaint, the Attorney

5   General's Office placed Leishman on home assignment effective immediately and

6   without any warning or explanation. *Id.* at 14. He was told that someone would

7   contact him about his sexual orientation discrimination complaint. *Id.* at 15.

8        The Attorney General's Office retained Seattle law firm Defendant Ogden

9   Murphy Wallace to investigate Leishman's discrimination complaint. *Id.* at 20.

10  Ogden Murphy attorney Defendant Patrick Pearce interviewed Leishman on two

11  separate occasions. *Id.* at 20–21. Pearce represented to Leishman that Ogden

12  Murphy's investigation was limited to Leishman's sexual orientation complaint. *Id.*

13  at 20–21. No one told Leishman, but by that time, the Attorney General's Office had

14  expanded the scope of Ogden Murphy's investigation to include "separate secret

15  complaints" about Leishman's workplace conduct. *Id.* at 24.

16       Around the same time, Leishman retained private counsel "in connection

17  with all issues related to his employment dispute, with the sole exception of

18  Leishman's pending sexual orientation discrimination complaint." *Id.* at 22. Ogden

19  Murphy interviewed Leishman outside the presence of his attorney. *Id.* at 23, 27.

20       On April 26, 2016, Pearce forwarded his finished report to the Attorney

21  General's Office. *Id.* at 27. About two weeks later, at a meeting on May 9, 2016, the

22  Attorney General's Office terminated Leishman's employment by providing him and

23  his attorney with a one-sentence termination letter. *Id.* at 31. The Attorney

General's Office also gave Leishman a copy of Ogden Murphy's investigative report at the meeting. *Id.* When Leishman reviewed the report, he learned that his workplace conduct was also at issue. *Id.* at 26.

On October 18, 2016, Leishman's counsel submitted a tort claim form, stating, "This claim involves legal claims of disability discrimination, failure to accommodate and retaliation." *Id.* at 34. The parties attended mediation and ultimately entered a written settlement agreement in November 2016. *Id.* Leishman alleges the "2016 Settlement Agreement is limited to [his] claims identified in the 2016 Tort Claim." *Id.*

Since his termination, Leishman has submitted "multiple requests" under Washington's Public Records Act to "various State agencies," including requests for documents related to the expenditure of public resources "for the private benefit" of certain individual State Defendants. *Id.* at 39–40. Leishman received some documents in response to his requests, but he contends that the Attorney General's Office failed to produce all responsive records. *Id.* at 40–42.

On December 18, 2018, Leishman filed bar complaints against Defendants Shane Esquibel and Kari Hanson—two of the Attorney General's Office's "top employment lawyers"—alleging they violated several rules of professional conduct in responding to his workplace disability accommodation request, among other things. *Id.* at 1, 39, 132. The Office of Disciplinary counsel deferred further investigation into Leishman's complaints. *Id.* at 40.

Finally, in January 2019, Leishman submitted ethics complaints against four Assistant Attorneys General, alleging ethics violations concerning the use of

1    "persons, money, or property for private gain," which he alleges Defendant Kathryn

2    Reynolds, the Executive Director of the Washington Executive Ethics Board,

3    refused to accept. *Id.* at 45, 145, 148.

4    **2.2    Procedural background.**

5          On April 24, 2020, Leishman filed this case in King County Superior Court.

6    Dkt. No. 1-2. The then-named defendants removed the case to federal court shortly

7    after. Dkt. No. 1. Leishman amended his complaint in July 2020, naming additional

8    defendants. Dkt. No. 11. Defendants moved to dismiss Leishman's complaint, and

9    the Honorable Richard A. Jones, United States District Judge, granted in part and

10   denied in part. Dkt. Nos. 26, 67. On April 26, 2021, Leishman filed a Second

11   Amended Complaint, which Defendants also dismissed. Dkt. No. 68, 72. Leishman

12   moved to amend his complaint once again. Dkt. No. 126. Judge Jones granted his

13   motion, and denied Defendants' motion to dismiss Leishman's second amended

14   complaint as moot. Dkt. No. 132. Leishman filed his Third Amended Complaint

15   ("TAC") on October 3, 2022. Dkt. No. 133. The State Defendants moved to dismiss

16   Leishman's latest complaint. [2] Dkt. Nos. 146, 148.

17         In October 2021, Leishman filed a related case under the Public Records Act

18   against Defendant Office of the Governor in Thurston County Superior Court for its

19   alleged failure to respond to Leishman's records requests from the year before. On

20   August 25, 2023, Judge Mary Sue Wilson determined the Office of the Governor's

21

22   ───────────────

23   [2]  Defendant Ogden Murphy Wallace, and two of its lawyers—Defendants Patrick
     Pearce and Karen Sutherland—also moved to dismiss Leishman's claims against
     them. Dkt. No. 148. The Court addresses their motion in a separate order.

1    responses to Leishman's public record requests were timely and dismissed

2    Leishman's PRA action with prejudice. Dkt. No. 193-1 at 22.

3        On June 30, 2020, Leishman also filed a mandamus action in state court

4    seeking an order commanding Reynolds to accept his Executive Ethics Board

5    complaints in line with the Ethics in Public Service Act. The mandamus action is

6    pending before Division Two of the Washington Court of Appeals. Dkt. No. 183 at 2.

7                              **3.  DISCUSSION**

8    **3.1.    Legal standards.**

9        **3.1.1.    Rule 12(b)(6) standard.**

10       The Court will grant a motion to dismiss only if the complaint fails to allege

11   "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

12   *Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

13   plaintiff pleads factual content that allows the court to draw the reasonable

14   inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

15   556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard is less than

16   probability, "but it asks for more than a sheer possibility" that a defendant did

17   something wrong. *Id.* (citations omitted). "Where a complaint pleads facts that are

18   'merely consistent with' a defendant's liability, it 'stops short of the line between

19   possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S.

20   at 557). In other words, a plaintiff must have pled "more than an unadorned, the-

21   defendant-unlawfully-harmed-me accusation." *Id.*

22       When considering a motion to dismiss, the Court accepts all factual

23   allegations pled in the complaint as true and construes them in the light most

favorable to the plaintiff. *Lund v. Cowan*, 5 F.4th 964, 968 (9th Cir. 2021). But courts "do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citations omitted). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.* (citation omitted).

### 3.1.2.    Rule 12(g)(2) standard.

At various times, Leishman argues that Rule 12(g)(2) prevents the State Defendants from raising certain issues like the statute of limitations in successive motions to dismiss. Leishman is correct that some courts have applied Rule 12(g)(2) to deny a defendant's attempts to file multiple pre-answer motions to dismiss, finding such motions contravene the purpose of the Rule, which is "to prevent litigants from interposing defenses in a piecemeal fashion and eliminate unnecessary delay at the pleading stage." *Donnelli v. Peters Sec. Co.*, No. 02 C 0691, 2002 WL 2003217, at *3 (N.D. Ill. Aug. 29, 2002) (citations omitted). But the Ninth Circuit generally takes a "forgiving" approach to Rule 12(g)(2), recognizing the unnecessary and costly delays caused by a more rigid application of the Rule, and instead deferring to the "practical wisdom" of the district courts in deciding whether to allow "late-filed" Rule 12(b)(6) motions. *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 319 (9th Cir. 2017); *see also Banko v. Apple, Inc.,* No. 13–02977 RS, 2013 WL 6623913, at *2 (N.D. Cal. Dec. 16, 2013) (citation omitted) ("Although Rule 12(g) technically prohibits successive motions to dismiss that raise arguments that could have been made in a prior motion . . . courts faced with a successive motion often

1
2

exercise their discretion to consider the new arguments in the interests of judicial economy.").

3
4
5
6
7
8
9
10
11
12

Leishman does not argue, nor does the Court find, that the State Defendants have filed a second motion to dismiss for any "strategically abusive purpose." *In re Apple iPhone Antitrust Litig.*, 846 F.3d at 320. Likewise, Leishman does not argue, much less demonstrate, prejudice. As a practical matter, if the Court does not consider the statute of limitations and other issues raised by the State Defendants now, the parties will only (re)litigate them later. "That would be inefficient and a waste of judicial resources." *Trang v. Bank of George*, No. 2:17-CV-00162-APG-EJY, 2022 WL 17668084, at *5 (D. Nev. Dec. 13, 2022). So in the interest of judicial economy, the Court exercises its discretion to consider all issues raised by the State Defendants, even those that may be seen as late-filed.

13

**3.2.   The Court lacks sufficient context to rule on the intent of the parties in forming the 2016 Settlement Agreement.**

14
15
16
17
18
19

The State Defendants argue Leishman's complaint must be dismissed because the "factual and legal claims asserted by Leishman's [Third Amended Complaint] easily fall within the scope of the claims" he released in his 2016 Settlement Agreement with the Attorney General's Office. Dkt. No. 7. Leishman responds that the State Defendants "attempt to stretch" too far the claims released in the 2016 Settlement Agreement. Dkt. No. 152 at 7.

20
21
22
23

Judge Jones previously considered the Settlement Agreement, holding the court could not determine the scope of the agreement because the Tort Claim Form—a document the Settlement Agreement incorporated by reference—was

missing from the record. The parties have since filed a copy of the Tort Claim Form, but the Court still lacks sufficient context to rule on the scope of the release.[3]

"The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) (citation omitted). In Washington, "[t]he touchstone of contract interpretation is the parties' intent." *Tanner Elec. Co-op. v. Puget Sound Power & Light Co.*, 911 P.2d 1301, 1310 (Wash. 1996) (citing *Scott Galvanizing, Inc. v. Nw. EnviroServices, Inc.*, 844 P.2d 428, 432 (Wash. 1993)). Courts ascertain the parties' intent by following the "objective manifestation theory of contract interpretation," which focuses on the "objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties.'" *Thomas Ctr. Owners Ass'n v. Robert E. Thomas Tr.*, 501 P.3d 608, 614 (citations omitted), *review denied*, 508 P.3d 679 (Wash. 2022). "However, in determining the parties' intent, context matters and informs the objective manifestations of the agreement." *Pierce v. Bill & Melinda Gates Found.*, 475 P.3d 1011, 1017 (Wash. App. Ct. 2020) (citing *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 266-267 (Wash. 2005)). Thus, the intent of the parties may be discovered from the actual language of the agreement, *Nyman v. Hanley,* 491 P.3d 974, 976–77 (Wash.

---

[3] The Court considers the Tort Claim Form under the doctrine of incorporation by reference. Incorporation by reference can occur when a plaintiff attaches a copy of a "written instrument" to the complaint. Fed. R. Civ. P. 10(c); *see Allen v. Discovery Commc'ns, LLC*, No. PWG-15-1817, 2016 WL 5404558, at *3 (D. Md. Sept. 28, 2016) (recognizing EEOC Notice of Charge of Discrimination attached to complaint under Fed. R. Civ. P. 10(c)). Leishman amended his complaint and attached a copy of the Tort Claim Form as an exhibit. Dkt. No. 133 at 117.

2021), as well as from the contract "as a whole, the subject matter and the objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties." *Healy v. Seattle Rugby, LLC,* 476 P.3d 583, 587 (Wash. App. Ct. 2020) (citations omitted).

Through the 2016 Settlement Agreement, Leishman released "any and all" claims described on his Tort Claim Form, which the Settlement Agreement incorporated by specific reference. Dkt. No. 147-1 at 2. The Tort Claim Form described "legal claims of disability discrimination, failure to accommodate and retaliation." *Id.* at 6. Leishman concedes that he has released these claims, at least as it relates to events that occurred before May 9, 2016 (i.e., the incident date on the Tort Claim Form). Dkt. No. 152 at 7.

The Court lacks context, however, to construe the rest of the contract and to evaluate the reasonableness of the State Defendants' interpretation that the 2016 Settlement Agreement in fact released all claims that accrued during, and even after, Leishman's employment. There are strong policy considerations that encourage private settlement agreements, and such agreements typically include general releases resolving "any and all" claims, including those known and unknown at the time the parties enter the agreement. But the Court will not speculate about the intent of the parties when they executed the 2016 Settlement Agreement without the benefit of context, which may require the Court to consider extrinsic evidence—a forbidden endeavor on a Rule 12(b)(6) motion. *See Viking Bank v. Firgrove Commons 3, LLC,* 334 P.3d 116, 120 (Wash. Ct. App. 2014)

1 (holding the "context rule" of contract interpretation allows courts to consider

2 extrinsic evidence to understand the parties' intent).

3 **3.3.   Leishman's WLAD claims are untimely or too vague to maintain.**

4 Leishman alleges employment discrimination and retaliation claims. With

5 few exceptions, these claims are subject to strict filing deadlines. The State

6 Defendants argue Leishman's claims are untimely. They have a point. *See U.S. ex*

7 *rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.,* 720 F.3d 1174, 1178 (9th Cir.

8 2013) ("A claim may be dismissed as untimely pursuant to a 12(b)(6) motion 'only

9 when the running of the statute [of limitations] is apparent on the face of the

10 complaint.'") (citation omitted).

11 Under the Washington Law Against Discrimination (WLAD), plaintiffs must

12 file suit within three years of each discrete act of discrimination or retaliation to be

13 considered timely. *Antonius v. King Cnty.*, 103 P.3d 729, 732–34 (Wash. 2004).

14 "Discrete acts" include, for example, termination, failure to promote, denial of

15 transfer, or refusal to hire—for these acts, the statute of limitations period begins to

16 run from the date of the alleged unlawful employment practice. *Id.* at 733–34.

17 Hostile-work environment claims, however, are "'different in kind from discrete

18 acts' and 'their very nature involves repeated conduct.'" *Id.* at 733 (quoting *Nat'l*

19 *R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)). Thus, so long as one act

20 contributing to a hostile-work environment occurs within the timeliness period, the

21 entire period of the hostile-environment is considered actionable. *Antonius*, 103

22 P.3d at 732–34.

23

1
2
3
4
5
6

The Attorney General's Office fired Leishman on May 9, 2016, but the termination became effective on June 1, 2016. This means the cutoff for filing a WLAD claim premised on acts that occurred during Leishman's employment was June 1, 2019 at the latest. But Leishman did not sue any of the State Defendants until April 24, 2020. Dkt. No. 1-2. Thus, Leishman filed his WLAD claims nearly 11 months too late.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Leishman claims the "discovery rule" saves his untimely claims from dismissal, arguing that he did not learn about the "scheme" between the State Defendants and their outside investigator until October 20, 2017. Washington Courts, however, have explicitly rejected the "discovery rule" of accrual in WLAD hostile-work environment claims. *Antonius*, 103 P.3d at 736. And while the discovery rule perhaps applies to other acts of discrimination under state and federal law, Leishman knew about all the specific injuries giving rise to his employment discrimination and retaliation claims at the time of his discharge, as alleged in his Third Amended Complaint and confirmed in his opposition brief. *See Douchette v. Bethel Sch. Dist. No. 403,* 818 P.2d 1362, 1366 (Wash. 1991) (holding discovery rule did not apply to plaintiff's WLAD discrimination claims because she was aware of the facts giving rise to her cause of action at the time of her discharge). Moreover, the scheme Leishman allegedly "discovered," supports his alleged conspiracy and Constitutional violation claims, not his standalone employment discrimination and retaliation claims. Thus, the discovery rule wouldn't affect the timeliness of his WLAD claims.

23

Leishman also argues the limitations period on his claims should be equitably tolled because "[d]uring a substantial portion of the period from November 2016 to January 2020, [he] was incapacitated by his disability, including by the injuries Defendants caused." Dkt. No. 133 at 46. "As with the limitations period itself, we borrow our rules for equitable tolling of the period from the forum state. . . ." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (citations omitted). Under Washington law, "equitable tolling is a remedy to be used sparingly." *Fowler v. Guerin*, 515 P.3d 502, 506 (Wash. 2022) (cleaned up). Here, Leishman's "conclusory and vague claim, without a particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights, is manifestly insufficient to justify any further inquiry into tolling." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000); *see also Bartlett v. Dep't of the Treasury (IRS)*, 749 F.3d 1, 14 (1st Cir. 2014) (denying equitable tolling where plaintiff's mental illness did not impede her ability to "engage in rational thought and deliberate decision making"). Leishman has not alleged facts even if taken as true that would give rise to equitable tolling.

Next, Leishman argues that the esteemed Judge Richard Jones previously ruled the State Defendants' statute of limitation arguments failed to satisfy Rule 12(b)(6). Dkt. No. 152 at 9. To be sure, Judge Jones denied the State Defendants' previous motion because, "*looking only at the face of the complaint*," the Court could not decide the statute of limitations issues as presented. Dkt. No. 67 at 12–15 (emphasis added). But since Judge Jones's earlier ruling, Leishman has amended his complaint to clarify and elaborate on certain claims. Thus, the law-of-the-case

1
2
3

doctrine does not bar this Court from considering anew the sufficiency of Leishman's Third Amended Complaint. *See Flowers v. Seki*, 176 F.3d 482 (9th Cir. 1999).

4
5
6
7
8
9
10
11
12
13
14
15
16
17

Finally, apart from their challenges to his timeliness, the State Defendants argue Leishman has "not sufficiently pled" his discrimination and retaliation claims. The Court agrees, as Leishman offers no facts within the statute of limitations (i.e., post-employment) in support of his third and eleventh causes of action for sexual orientation discrimination and "failure to engage in disability reasonable accommodation process."[4] His seventh cause of action for "retaliation and discrimination" purports to address post-employment conduct, alleging Defendants Western Washington University and Office of the Governor discriminated and retaliated against him when they failed to hire him for various jobs he applied for following his termination. But beyond stating the titles of the handful of jobs he applied for, Leishman offers no facts showing a plausible failure to hire claim. Indeed, Leishman does not allege that the decisionmakers involved were aware of his sexual orientation or protected activity, that he was qualified for

18
19
20
21
22
23

---

[4] Leishman's Ninth Cause of action is for disability discrimination under the ADA. Dkt. No. 133 at 56. It appears this claim is directed at the Ogden Murphy Wallace defendants only. *Id.* Leishman could not maintain an ADA action against the State Defendants if he wanted, however, because the Eleventh Amendment bars suits against states for money damages under Title I of the ADA. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001); *see Walsh v. Nev. Dep't of Hum. Res.,* 471 F.3d 1033, 1037-38 (9th Cir. 2006) (individual defendants may not be held personally liable under Title I of the ADA); *see also Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.,* 5 F.3d 378, 379–80 (9th Cir. 1993) (immunity provided by the Eleventh Amendment extends to State agencies because they are effectively an "arm of the state.").

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS - 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

all the positions he applied for, or that after he was rejected, the positions remained open and Defendants continued to seek applicants. *See Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cnty.*, 404 P.3d 464, 470-471 (2017) (recounting elements of failure to hire claim under WLAD and Title VII). Leishman's complaint does not meet the federal pleading requirements as it speaks only in legal conclusions on these claims. *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176–78 (9th Cir. 2021) (applying *Iqbal/Twombly* pleading standard to ADA cases, stating "[t]aken together, *Iqbal* and *Twombly* require well-pleaded facts, not legal conclusions. . . .").

Accordingly, the Court dismisses Leishman's WLAD claim against the State Defendants as untimely on the face of the complaint, including his Third, Eighth, and Eleventh causes of action.[5] The Court also finds that Leishman's WLAD claim fails to allege sufficient facts demonstrating his entitlement to relief to the extent his claim is based on conduct after his termination, including his Third, Seventh, and Eleventh causes of action.

### 3.4.  Leishman's Section 1983 Claims.

Leishman maintains Section 1983 claims. To state a claim under Section 1983, he must show (1) that a right secured by the Constitution or federal law was violated, and (2) that the alleged violation was committed by a person acting under the color of State law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Leishman alleges the

---

[5] The State Defendants also allege that Leishman's sexual-orientation discrimination claim—that is, his third claim for relief—lacks sufficient factual detail, and thus fails to state a plausible claim. The Court need not rule on the sufficiency of Leishman's factual allegations given its ruling on the statute of limitations.

1
2
3
4

individual State Defendants violated his Constitutional rights to (1) petition the government, (2) equal protection under the law, and (3) due process. The State Defendants argue that his Section 1983 claims are doomed for a host of reasons, which the Court addresses below.

5
6

### 3.4.1.   Leishman fails to state a plausible Section 1983 First Amendment Petition claim.

7
8
9
10

Leishman argues the individual State Defendants deprived him of his right to petition the government for redress of his grievances. The State Defendants concede that Leishman's ethics complaints, public records request, and bar complaints are "protected petitioning activity," but they argue that Leishman's Section 1983 First Amendment petition claim is otherwise defective.

11
12
13
14
15
16
17
18
19
20
21
22
23

"[T]he right of access to the agencies and courts to be heard ... is part of the right of petition protected by the First Amendment." *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972). Section 1983 claims based on a First Amendment violation are generally framed as retaliation claims, requiring a plaintiff to "plausibly allege that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (citation omitted). "To ultimately prevail on such a claim, a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury." *Id.* (citation omitted).

1

2       While there is a constitutional right to petition the government, "this right is

3  uni-directional; it does not require government officials or politicians to respond, or

4  even listen, to citizens." *Rodriguez v. Newsom*, 974 F.3d 998, 1010 (9th Cir. 2020).

   Thus, the proper inquiry for determining whether a First Amendment violation has

5  occurred becomes "whether an official's acts would chill or silence a person of

6  ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr.*

7  *v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).

8       Leishman fails to state a cognizable First Amendment claim based on his

9  allegations that the individual State Defendants failed to accept his complaints or

10 respond quickly enough to his petitioning activity because the First Amendment

11 right to petition does not include a right to any particular response or action.

12 *Rodriguez,* 974 F.3d at 1010; *see L. F. v. Lake Washington Sch. Dist. #414,* 947 F.3d

13 621, 626 (9th Cir. 2020) ("First Amendment does not compel the government to

14 respond to speech directed toward it."). Moreover, Leishman does not allege—nor

15 does the Court find—that the State Defendants' actions would dissuade a person of

16 ordinary firmness from carrying on with the petitioning activity or protected speech

17 at issue. Nor does Leishman allege—besides from his conspiracy claims, which the

18 Court addresses below—any sort of plausible causal connection between his

19 petitioning activity and the State Defendants alleged retaliatory conduct.

20       Accordingly, Leishman fails to state a Section 1983 First Amendment claim

21 against the State Defendants.

22

23

1

2

### 3.4.2.    Leishman's Section 1983 Equal Protection claim is time-barred.

Leishman describes his Section 1983 Equal Protection claim as follows: "The Fourteenth Amendment affords Leishman protection against discriminatory treatment by state employees and officials on the basis of his sexual orientation and disability." Dkt. No. 152. at 14. He offers no further explanation or background and draws no connection in his briefing to the allegations in his Third Amended Complaint. It seems clear, however, that the factual underpinning for this claim mirrors his employment discrimination claims. While a plaintiff may use Section 1983 to escape some of the procedural defects that may preclude a Title VII or ADA lawsuit, it cannot be used to circumvent the statute of limitations. *See Roberts v. Coll. of the Desert,* 870 F.2d 1411, 1415 (9th Cir. 1988) (citing *Keller, 827 F.2d at 956–63; Ratliff v. City of Milwaukee*, 795 F.2d 612, 623–24 (7th Cir. 1986)).

As the State Defendants correctly point out, Leishman's "Section 1983 action is governed by Washington's three-year statute of limitations for personal injury actions." *Cruzado* v. *State of Wash. et al.,* No. 2:22-CV-1474, 2023 WL 6126766, at *3 (W.D. Wash. Sept. 19, 2023). Thus, if Leishman's Section 1983 Equal Protection claim turns on discrimination that occurred during his employment, it is time-barred as explained above. *See supra* Section 3.4.

To the extent his Section 1983 Equal Protection Claim is based on discrimination that occurred after his employment, Leishman offers no factual allegations to support an inference that the State Defendants acted "with an intent or purpose to discriminate" against him based on his sexual orientation or disability

status. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."). Thus, Leishman's claim would not withstand scrutiny under *Twombly* and *Iqbal*. Either way, Leishman cannot maintain a Section 1983 Equal Protection claim.

### 3.4.3. Leishman's Section 1983 Fourteenth Amendment Due Process claim is time-barred.

Leishman alleges the State Defendants deprived him of a "liberty and property interests" when the Ogden Murphy report, which contained false, misleading, and stigmatizing information about his termination, was "publicly disclosed" without affording him a name-clearing hearing. Dkt. No. 152 at 14-15. The State Defendants argue among other things that this claim is time-barred.

As discussed above, Section 1983 claims are subject to a three-year statute of limitations. *See supra* Section 3.4.2. So the question when considering the timeliness of Leishman's Due Process claim is when the stigmatizing information was published that arguably would have triggered his due process rights.

The answer lies in *Cox v. Roskelley*, a Ninth Circuit case cited by both parties. 359 F.3d 1105 (9th Cir. 2004). In *Cox,* the plaintiff worked for a county employer, overseeing aspects of a project related to repaving a county road. The county received many complaints about plaintiff's performance, and he was eventually fired by way of a termination letter. The letter charged the plaintiff with

1  "improper conduct" and had the potential to "impair [his] reputation for honesty or

2  morality." *Id.* at 1113. The letter was placed in the plaintiff's personnel file, and

3  through a public records request, a local newspaper obtained a copy. *Id.* at 1109.

4  The Ninth Circuit held that placing stigmatizing information in an employee's

5  personnel file, "in the face of a state statute mandating release upon request,

6  constitute[s] publication sufficient to trigger [the employee's] liberty interest under

7  the Fourteenth Amendment." *Id.* at 1112. In such a case, the Circuit held, "[t]he

8  lack of an opportunity for a name-clearing hearing [would violate a plaintiff's] due

9  process rights." *Id.*

10      Most relevant here, the Ninth Circuit found that in states like Washington—

11  where statutory provisions make personnel files subject to public records requests—

12  a stigmatizing letter may be considered published for due process purposes *once

13  placed in an employment file. Id.* ("[A]bsent expungement, placement of

14  stigmatizing information in an employee's personnel file constitutes publication

15  when the governing state law classifies an employee's personnel file as a public

16  record.").

17      Here, the statute of limitations began when the Ogden Murphy report was

18  placed in Leishman's personnel file at or near the time of his termination on May 9,

19  2016. Thus, his Due Process claim is at least 10 months too late.

20  ### 3.4.4. Having found no plausible Section 1983 claim, the Court declines to reach the question of qualified immunity.

21      The individual State Defendants raise a qualified immunity defense, which

22  provides that "government officials performing discretionary functions generally are

1   shielded from liability for civil damages insofar as their conduct does not violate

2   clearly established statutory or constitutional rights of which a reasonable person

3   would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). But having

4   found that Leishman has failed to state a plausible Section 1983 claim, the Court

5   need not analyze this issue further.

6   **3.5.    Leishman fails to state a plausible Section 1985 claim.**

7           Leishman alleges the State Defendants and others took part in a conspiracy

8   against him. Judge Jones previously dismissed Leishman's conspiracy claim,

9   finding it failed to meet Rule 9(b)'s heightened pleading standard and lacked many

10  of the "essential" elements of a Section 1985(3) claim. *See* Dkt. No. 67 at 19. Judge

11  Jones granted Leishman leave to amend his claim, but the Court finds that

12  Leishman's amended claim suffers from many of the same basic defects.

13          To state a claim "under § 1985(3), a complaint must allege (1) a conspiracy,

14  (2) to deprive any person or a class of persons of the equal protection of the laws, or

15  of equal privileges and immunities under the laws, (3) an act by one of the

16  conspirators in furtherance of the conspiracy, and (4) a personal injury, property

17  damage or a deprivation of any right or privilege of a citizen of the United States."

18  *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980). The plaintiff must show

19  "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus

20  behind the conspirators' action. The conspiracy, in other words, must aim at a

21  deprivation of the equal enjoyment of rights secured by the law to all.'" *Orin v.*

22  *Barclay*, 272 F.3d 1207, 1217 (9th Cir. 2001) (quoting *Griffin v. Breckenridge*, 403

23  U.S. 88, 102 (1971)).

1     The plaintiff must state "specific facts to support the existence of the claimed

2   conspiracy," showing an agreement and concerted action among the conspirators to

3   violate his constitutional rights. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916,

4   929–30 (9th Cir. 2004) (internal citation omitted). "A mere allegation of conspiracy

5   without factual specificity is insufficient" to survive a motion to dismiss. *Karim-*

6   *Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988).

7     Leishman's Third Amended complaint includes additional details about the

8   so-called "gaslighting" conspiracy against him, which he claims was started to

9   terminate his employment by unlawful means. But the new factual allegations

10   included in his amended complaint do not reveal a conspiracy to deprive him of any

11   constitutional rights. At most, these allegations show his co-workers coordinating to

12   manage his performance. Rather than pleading facts showing an agreement or a

13   meeting of the minds between the defendants to violate his constitutional rights,

14   Leishman offers generalities about "[s]ecret [f]iles" and notes detailing his work

15   conduct. Dkt. No. 133 at 47.  Nor does Leishman allege that any of the conspirators

16   acted with animus towards him because of his sexual orientation or disability

17   status.

18     Finally, Leishman still fails to allege actions taken by the individual

19   defendants in furtherance of the conspiracy. What little he does allege about the

20   "who, what, when, where, and how of the alleged conspiracy"—as Judge Jones

21   succinctly put it—takes the form of legal conclusion. *See* Dkt. No. 67 at 19. While

22   the Court must accept as true all factual allegations contained in the complaint, it

23   need not accept legal conclusions. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS - 22

court must accept as true of all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Because Leishman has failed to allege sufficient factual details about the alleged conspiracy, including a specific agreement between the individual defendants to deprive him of his constitutional rights, the scope of the conspiracy, the role of each of the Defendants in the conspiracy, how the conspiracy operated, specific acts done in furtherance of the conspiracy, or animus held against him by any of the conspirators, he has failed to state a plausible Section 1985 claim.

### 3.6. Leishman fails to state a plausible Misrepresentation claim.

Like his Section 1985 claim, Judge Jones previously dismissed Leishman's misrepresentation claim because his allegations lacked the requisite detail to rise to the level of a plausible claim. Dkt. No. 67 at 19–20. The State Defendants argue that Leishman's amended complaint still does not pass muster under Rule 12(b)(6). Here again, the Court agrees.

A plaintiff claiming negligent misrepresentation must prove these elements:

(1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages.

*Ross v. Kirner*, 172 P.3d 701, 704 (Wash. 2007) (citation omitted). Each element must be proven by "clear, cogent, and convincing evidence." *Id.; see also Havens v. C & D Plastics, Inc.*, 876 P.2d 435, 447 (Wash. 1994). It may seem obvious, but

1    "[t]here must be justifiable reliance upon the negligent misrepresentation" to

2    establish a claim. *Havens*, 876 P.2d at 447.

3         Leishman's chief complaint is that the Attorney General's Office

4    misrepresented the purpose and scope of the workplace investigation that began

5    after he lodged a discrimination complaint—Leishman claims he was told the

6    investigation was about his discrimination complaint when in truth, the office was

7    also investigating Leishman's conduct as a prelude to his termination.

8         The Court accepts this allegation as true, as it must at this stage of the case,

9    but Leishman fails to state a plausible negligent misrepresentation claim because

10   he does not allege reliance on any false information given by the Defendants nor

11   that the *false information* proximately caused his damages.

12        Moreover, "negligent misrepresentation claims are subject to three-year

13   statutes of limitations. The statute does not begin to run until the cause of action

14   accrues. . . ." *Sabey v. Howard Johnson & Co.*, 5 P.3d 730, 739 (Wash. Ct. App.

15   2000). Leishman alleges he received a copy of the investigative report revealing the

16   expanded scope of the investigation on May 9, 2016, so that is the earliest date he

17   would have learned about any misrepresentations about whether he was the subject

18   of an investigation. Thus, any negligent misrepresentation claim would also be

19   untimely since Leishman filed this lawsuit in 2020.

20   **3.7.   Leishman fails to state a plausible Negligence claim.**

21        Leishman also brings a negligence claim against the State Defendants.

22   Leishman's Third Amended Complaint alleges the State Defendants owed him a

23   duty of "reasonable care" and "to exercise reasonable care in their supervision of

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS - 24

junior lawyers and investigators." Dkt. No. 133 at 53. But Leishman's opposition brief expands the scope of his negligence claim beyond what is stated in his complaint, arguing generally about the "misfeasance" and the State Defendants' generalized duty to avoid harming others. Dkt. No. 152 at 20. The State Defendants argue that Leishman has failed to identify a duty owed or breached with enough specificity to withstand a motion to dismiss. The Court agrees.

Washington courts have adopted the following test when it comes to negligent hiring and retention claims: "to hold an employer liable for negligently hiring or retaining an employee who is incompetent or unfit, a plaintiff must show that the employer had knowledge of the employee's unfitness or failed to exercise reasonable care to discover unfitness before hiring or retaining the employee." *Anderson v. Soap Lake Sch. Dist.*, 423 P.3d 197, 206 (Wash. 2018) (citations omitted). An action based on negligent training and supervision arises only when the employee is acting *outside* the scope of his employment. *Id.* at 208. "A duty of supervision extends to acts beyond the scope of employment when the employer knew, or in the exercise of reasonable care should have known that the employee presented a risk of danger to others." *Id.* at 209 (citation omitted). "Washington cases have generally interpreted this knowledge element to require a showing of knowledge of the dangerous tendencies of the *particular* employee." *Id.* (emphasis in original) (citation omitted).

Here, Leishman does not allege the State Defendants had knowledge that any of their personnel were incompetent or unfit, or that they were hired or retained with knowledge of their incompetence or unfitness. Likewise, he does not

1
2
3
4
5

allege the State Defendants had prior knowledge about the dangerous tendencies of any particular employee or that any of the acts complained about occurred outside the scope of their employment. These omissions are fatal to the negligent hiring, retention, and supervision claim suggested by Leishman's Third Amended Complaint.

6
7
8
9
10
11
12

To the extent, Leishman alleges some more generalized theory of negligence, he fails to plead his claim sufficiently. To prove negligence, Leishman must show "the existence of a duty, breach of the duty, and injury to plaintiff proximately caused by the breach." *Vargas v. Inland Wash., LLC*, 452 P.3d 1205, 1211 (Wash. 2019) (alterations omitted) (citation omitted). The existence of a duty owed is a question of law. *Id.* at 1211–12. But Leishman does not plead with any specificity the duty owed, what injury was suffered, or the proximate cause of the breach.

13

### 3.8.   Leishman fails to state a plausible claim of Negligent or Intentional Infliction of Emotional Distress.

14
15
16

Leishman alleges the State Defendants' "intentionally … and negligently inflicted" emotional distress upon him. The State Defendants argue these claims suffer from the same defects as Leishman's negligence claim.

17
18
19
20
21
22
23

Like any negligence claim, claims for negligent infliction of emotional distress in an employment context require a showing of "duty, breach, proximate cause, and damage or injury." *Snyder v. Med. Serv. Corp. of E. Washington*, 35 P.3d 1158, 1164 (Wash. 2001) (citation omitted). As noted above, Leishman alleges only a general duty on the part of the State Defendants to exercise reasonable care, but he does not identify any specific duty owed, or statutory or public policy violated. When it comes

1    to "responding to workplace disputes," however, "employers do not owe employees a

2    duty to use reasonable care to avoid the inadvertent infliction of emotional distress"

3    absent some statutory or public policy mandate. *Id.* at 1164.

4          Thus, even setting aside concerns about timeliness, Leishman cannot state a

5    claim for negligent infliction of emotional distress based on his termination unless it

6    violated "a clear mandate of public policy." *Lords v. N. Auto. Corp.*, 881 P.2d 256,

7    259 (Wash. Ct. App. 1994), *overruled on other grounds by Mackay v. Acorn Custom*

8    *Cabinetry, Inc.,* 898 P.2d 284, 286 (Wash. 1995). Assuming his negligent infliction

9    claim is based on conduct beyond his workplace disputes, Leishman has not

10   adequately described a factual basis for his claim.

11         Leishman's intentional infliction of emotional distress claim fairs no better.

12   The basic elements of the claim—sometimes called the tort of outrage—are as

13   follows: "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of

14   emotional distress; and (3) actual result to the plaintiff of severe emotional

15   distress." *Dicomes v. State*, 782 P.2d 1002, 1012 (Wash. 1989) (citations omitted).

16   "The conduct in question must be *so outrageous in character, and so extreme in*

17   *degree, as to go beyond all possible bounds of decency, and to be regarded as*

18   *atrocious, and utterly intolerable in a civilized community*." *Id.* (emphasis in

19   original) (citations omitted). "[M]ere insults and indignities, such as causing

20   embarrassment or humiliation, will not support imposition of liability on a claim of

21   outrage." *Id.* at 1013 (citations omitted). "[I]t is initially for the court to determine if

22   reasonable minds could differ on whether the conduct was sufficiently extreme to

23   result in liability." *Id.* (citation omitted).

1    The standard for proving extreme and outrageous conduct is high. For

2    example, in *Dicomes v. State,* the Washington Supreme Court found that the

3    plaintiff did not state a claim for outrage when she alleged that her employer

4    prepared a false report about her poor management skills, created solely to

5    embarrass, humiliate, and then fire her. *Id.* at 1005–06, 1012–13. The court held

6    that "even if the purpose of the report was to fire the plaintiff, the fact of the

7    discharge itself was not sufficient to support a claim of outrage." *Id.* at 1013

8    (citation omitted). Instead, "[i]t is the manner in which a discharge is accomplished

9    that might constitute outrageous conduct." *Id.* The Court found that the defendant

10   employer fired the plaintiff by privately delivering a termination letter, which could

11   not be considered "atrocious and intolerable in a civilized society." *Id.* In the end,

12   the Court found the "plaintiff's allegations amount to a showing of bad faith. And

13   even if they rose to the level of malice, … no claim of outrage could be stated." *Id.*

14       Here, Leishman does not allege facts showing that the manner of his

15   discharge was atrocious and intolerable. Similar to the plaintiff in *Dicomes,*

16   Leishman was fired in a private meeting by delivery of a written termination notice.

17   So the circumstances of his termination cannot support an outrage claim. Reading

18   Leishman's other allegations in their most favorable light, he can be said to allege

19   the State Defendants acted in bad faith towards him about the scope of the

20   investigation into Leishman's workplace conduct and any alleged "coverup" after

21   the fact, but as the Washington Supreme Court found in *Dicomes,* this is not enough

22   to state a claim of outrage.

23

Because Leishman fails to assert facts establishing a plausible right to relief, the Court GRANTS the State Defendants motion to dismiss his negligent and intentional infliction of emotional distress claims.

### 3.9.  *Colorado River* **Abstention is unwarranted.**

The Court has dismissed all of Leishman's claims, but as explained below, Leishman may seek leave to amend his complaint. Because the possibility for Leishman to salvage some of his claims remains, the Court will address the State Defendants' arguments about the need for *Colorado River* abstention.

In addition to this lawsuit, Leishman currently has a legal action pending against Defendant Kathryn Nadine Reynolds in the Washington Court of Appeals.[6] The State Defendants argue that Leishman asserts the same claims against Reynolds in this lawsuit and his state court action, and that, given the overlap and "the procedurally more advanced Washington State litigation," this Court should abstain from jurisdiction under the *Colorado River* abstention doctrine. Dkt. No. 146 at 12.

In *Colorado River,* the Supreme Court articulated a standard based on "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, [that] may justify a decision by the district court to stay federal proceedings pending the resolution of concurrent state court

---

[6] As noted above, Leishman's case against Reynolds is before the Washington Court of Appeals, Div. II, No. 57122-6-II. At the time this motion was filed, Leishman also had a case pending in Thurston County Superior Court. *See Leishman v. Off. of the Governor*, Thurston County Superior Court Case No. 21-2-01712-34. A Thurston County Superior Court judge dismissed Leishman's case on August 25, 2023. Dkt. No. 193-1.

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS - 29

proceedings involving the same matter." *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002) (citations omitted).

The Ninth Circuit recognizes a multi-factorial test when considering whether to abstain under *Colo. River*. *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 978–79 (9th Cir. 2011). But these factors should not be interpreted as a "mechanical checklist," and "some may not have any applicability to a case." *Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017) (citation omitted). Rather, courts are called on to carefully balance the important factors as they apply in each case, "'with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Thompson v. Horner*, No. C09-652JLR, 2009 WL 10726785, at *5 (W.D. Wash. Sept. 16, 2009) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). Indeed, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," as federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976).

Thus, a district court's ultimate task in evaluating whether to abstain, "is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the surrender of … [the court's] jurisdiction." *Thompson*, 2009 WL 10726785, at *5 (quoting *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1371 (9th Cir. 1990)).

Here, although the case is no doubt meaningful to the individual litigants, there is nothing exceptional enough about this employment dispute to warrant *Colorado River* abstention. Leishman's state court cases address narrow issues that

would not fully resolve the claims brought here even if they are factually related. Indeed, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . .." *Colo. River Water Conservation Dist.*, 424 U.S. at 817 (citations omitted). Moreover, the overlapping parts of the cases are routine. "Nothing about this dispute evinces a special or important rationale or legislative preference for resolving these issues in a single proceeding," such that this Court should abstain. *Seneca Ins. Co.*, 862 F.3d at 843.

Accordingly, the Court declines to abstain from this case because it does not present the exceptional circumstances required to trigger *Colorado River* abstention.

## 3.10. Leave to amend.

The Court dismisses many of Leishman's would be causes of action for failure to state a claim upon which relief can be granted. Ordinarily, when a court dismisses a pro se plaintiff's complaint for failure to state a claim, it must grant leave to amend even when no request to amend is made. *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017). But Leishman is a licensed attorney—he has already amended his complaint on three prior occasions, and at least some of his claims have previously been dismissed. Thus, claims that have already been dismissed once, and that are dismissed here, are dismissed now with prejudice. These claims include Leishman's Section 1985 and Misrepresentation claims.

As to Leishman's other claims that have been dismissed, the Court declines to grant him leave to amend his Third Amended Complaint without first requiring

him to comply with Local Rule 15, which provides that a "party who moves for leave to amend a pleading . . . must attach a copy of the proposed amended pleading as an exhibit to the motion or stipulated motion," and allow briefing both in support of and opposition to amendment. Given the problems identified with some of Leishman's claims, perhaps amendment is futile, but the Court will provide him a final opportunity to allege a plausible case against the State Defendants. Leishman must move to amend his Third Amended Complaint by no later than November 21, 2023.

## 4. CONCLUSION

In sum, the Court GRANTS the State Defendants' motion to dismiss, and orders as follows:

- Leishman's Second Claim for Relief (Section 1985(3) Conspiracy) and Sixth Claim for Relief (Misrepresentation) are DISMISSED with prejudice.

- Leishman's remaining claims against the State Defendants are DISMISSED without prejudice.

- Leishman may move to amend his Third Amended Complaint, but he must do so by no later than November 21, 2023. Failure to timely move will result in complete dismissal of the Third Amended Complaint with prejudice.

Dated this 31st day of October, 2023.

Jamal W

Jamal N. Whitehead
United States District Judge