UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROGER A. LEISHMAN,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON ATTORNEY GENERAL'S OFFICE; SHANE ESQUIBEL; ELIZABETH CHRISTINA BEUSCH; ALLYSON JANAY FERGUSON; KARI HANSON; SUZANNE LIABRAATEN; VALERIE PETRIE; KATHRYN NADINE REYNOLDS; WESTERN WASHINGTON UNIVERSITY; BRUCE SHEPARD; OFFICE OF THE GOVERNOR; OGDEN MURPHY WALLACE, PLLC; KAREN SUTHERLAND; and PATRICK PEARCE,<br><br>Defendants. | CASE NO. 2:20-cv-861<br><br>ORDER GRANTING OGDEN MURPHY WALLACE, PLLC, KAREN SUTHERLAND, AND PATRICK PEARCE'S MOTION TO DISMISS |

## 1. INTRODUCTION

Defendant Ogden Murphy Wallace, PLLC, and two of its lawyers who are also named as defendants, move to dismiss Plaintiff Roger Leishman's case. They argue, among other things, that Leishman is barred from suing them now because

ORDER - 1

he has already sued them in state court on the same claims and lost. As explained more fully below, the Court agrees and GRANTS their motion.

## 2. BACKGROUND

**2.1 Leishman's underlying employment dispute and Ogden Murphy's investigation.**

On July 14, 2015, the Attorney General's Office hired Leishman to serve as the Chief Legal advisor to Western Washington University. Dkt. No. 133 at 5. Shortly after he began working, Leishman disclosed to the Attorney General's Office that he was experiencing "serious Body-Focused Repetitive Behaviors (including trichotillomania), anxiety, bruxism, insomnia, and other physical and mental symptoms." *Id.* Leishman's physician later diagnosed him with Post-Traumatic Stress Disorder and serious codependency. *Id.* at 6. His symptoms affected his behavior at work, including his interactions with his coworkers. *Id.* at 6–7.

In late January 2016, Leishman submitted a formal workplace disability accommodation request, but the Attorney General's Office denied his request. *Id.* at 9, 11.

About a month later, and separate from his accommodation request, Leishman filed a formal sexual orientation discrimination complaint. *Id.* at 12. He alleged that his supervisor had made "homophobic allegations" against him and wrongfully withheld a $3,000 raise, as "part of a pattern of implicit and explicit workplace homophobia." *Id.* at 12.

Several days after submitting his discrimination complaint, the Attorney General's Office placed Leishman on home assignment effective immediately and

without any warning or explanation. *Id.* at 14. He was told that someone would contact him about his sexual orientation discrimination complaint. *Id.* at 15.

The Attorney General's Office retained Seattle law firm Defendant Ogden Murphy Wallace to investigate Leishman's discrimination complaint. *Id.* at 20. Ogden Murphy attorney Defendant Patrick Pearce, interviewed Leishman twice. *Id.* at 20–21. Pearce represented to Leishman that Ogden Murphy's investigation was limited to Leishman's sexual orientation complaint. *Id.* at 20–21. No one told Leishman, but by that time, the Attorney General's Office had expanded the scope of Ogden Murphy's investigation to include "separate secret complaints" about Leishman's workplace conduct. *Id.* at 24.

Around the same time, Leishman retained private counsel "in connection with all issues related to his employment dispute, with the sole exception of Leishman's pending sexual orientation discrimination complaint." *Id.* at 22. Ogden Murphy interviewed Leishman outside the presence of his attorney. *Id.* at 23, 27.

On April 29, 2016, Pearce forwarded his finished report to the Attorney General's Office. *Id.* at 27. About two weeks later, at a meeting on May 9, 2016, the Attorney General's Office terminated Leishman's employment by providing him and his attorney with a one-sentence termination letter. *Id.* at 31. The Attorney General's Office also gave Leishman a copy of Ogden Murphy's investigative report at the meeting. *Id.* at 31. When Leishman reviewed the report, he learned that his workplace conduct was also at issue. *See id.* at 26.

**2.2   Leishman sues Ogden Murphy and Pearce in state court and his case reaches final judgment.**

On May 10, 2017, Leishman sued Ogden Murphy and Pearce in King County Superior Court, alleging negligence, violation of the Consumer Protection Act, negligent misrepresentation, fraud, and discrimination. Dkt. Nos. 133 at 37; 149-1. Ogden Murphy and Pearce moved for judgment on the pleadings under Washington Civil Rule 12(c), arguing RCW 4.24.510 rendered them immune from liability for their communications and investigative report about Leishman to the Attorney General's Office. Dkt. No. 149-4. Leishman opposed their motion. Dkt. No. 149-2.

The trial court heard oral argument from the parties and granted the motion, dismissing Leishman's claims on November 3, 2017. Dkt. No. 149-5. Leishman moved for reconsideration, but the trial court denied his request. Dkt. Nos. 149-6; 149-7.

Leishman appealed the trial court's dismissal to the Washington Court of Appeals. The Court of Appeals reversed the trial court, holding that RCW 4.24.510 did not immunize Ogden Murphy and Pearce because they fell outside the protections of the statute. *Leishman v. Ogden Murphy Wallace PLLC*, 451 P.3d 1101, 1106–07 (Wash. Ct. App. 2019).

The Washington Supreme Court had the final say on the matter. The court "reverse[d] the Court of Appeals and reinstate[d] the trial court's grant of judgment on the pleadings." *Leishman v. Ogden Murphy Wallace, PLLC*, 479 P.3d 688, 695 (2021), *reconsideration denied* (Aug. 19, 2021), *as amended* (Aug. 19, 2021).

Ultimately, the court remanded the case to the trial court for further proceedings on a single issue. *Id.* at 696.

On remand, the trial court concluded that none of Leishman's claims "survived this [trial court's] prior decision and the decision of the Washington Supreme Court in *Leishman v. Ogden Murphy Wallace, PLLC*, 196 Wn.2d 898, 479 P.3d 688 (Wash. 2021)." Dkt. No. 149-12 at 9. Rather than appealing this order, Leishman moved the Washington Supreme Court to recall its mandate remanding the case to the trial court. On June 8, 2022, the court denied Leishman's request. Dkt. Nos. 149-14; 149-13.

## 2.3   Leishman amends his complaint to name Ogden Murphy, Pearce, and Sutherland as Defendants in this action.

On October 3, 2022, Leishman amended his complaint in this matter for a third time to name Ogden Murphy, Pearce, and Karen Sutherland (together, "Ogden Murphy Defendants") as defendants. He alleges claims against them for negligence, violation of the Consumer Protection Act, negligent misrepresentation, fraud, and discrimination—the same claims he raised in his prior state court action.

## 3.  DISCUSSION

### 3.1.  Legal standards.

#### 3.1.1.   Rule 12(b)(6) standard.

The Court will grant a motion to dismiss only if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

ORDER - 5

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard is less than probability, "but it asks for more than a sheer possibility" that a defendant did something wrong. *Id.* (citations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly,* 550 U.S. at 557). A plaintiff must have pled "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

When considering a motion to dismiss, the Court accepts factual allegations pled in the complaint as true and construes them in the light most favorable to the plaintiff. *Lund v. Cowan*, 5 F.4th 964, 968 (9th Cir. 2021). But courts "do not 'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citations omitted). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.* (internal quotation marks omitted).

### 3.1.2. Judicial Notice.

Typically, courts are confined to the contents of the complaint when considering a Rule 12(b)(6) motion. But judicial notice under Federal Rule of Evidence 201 is an exception to this rule. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018). Courts may take judicial notice of facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). Courts may also take notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson*

*Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992). (internal quotation marks omitted). Accordingly, the Court may take notice of the state court proceedings involving Leishman, Ogden Murphy, and Pearce.

**3.2. The doctrine of Res Judicata bars Leishman's claims against the Ogden Murphy Defendants.**

The Ogden Murphy Defendants argue that Leishman's claims asserted against them in his Third Amended Complaint are barred by the doctrine of res judicata because they were already litigated to final judgment in state court. Leishman insists that res judicata does not apply because his previous lawsuit involved different subjects, causes of action, and parties, and because dismissal of his federal case would generally "work an injustice."

A defendant may raise res judicata, or claim preclusion, as a defense in a motion to dismiss under Rule 12(b)(6). *New York Life Ins. Co. v. Gunwall*, No. C19-226RSL, 2023 WL 3722233, at *3 (W.D. Wash. May 30, 2023) (citing *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984)). "When considering the preclusive effect of a state court decision, this Court must give the same preclusive effect to [that] judgment as another court of that State would give, meaning that we apply res judicata as adopted by that state." *Id.* (internal quotation marks omitted). Thus, Washington laws of preclusion will apply.

"Under Washington law, claim preclusion means 'a plaintiff is not allowed to recast his claim under a different theory and sue again . . . . [A]ll issues which might have been raised and determined are precluded.'" *Feminist Women's Health Ctr. v. Codispoti*, 63 F.3d 863, 867 (9th Cir. 1995) (quoting *Shoemaker v. City of*

*Bremerton*, 745 P.2d 858, 860 (Wash. 1987)). "[F]or the doctrine to apply, a prior judgment must have a concurrence of identity with a subsequent action in (1) subject matter, (2) cause of action, and (3) persons and parties, and (4) the quality of the persons for or against whom the claim is made." *Loveridge v. Fred Meyer, Inc.*, 887 P.2d 898, 900 (Wash. 1995). When these requirements are met, all matters that were litigated *or could have been litigated* in the prior action, cannot support a later action. *Id.*

Because they are all contested, the Court analyzes each element below.

### 3.2.1.  Identity of subject matter?

Washington law does not specify how precisely the subject matter in the first and second suit must align to have identity of subject matter. *Eugster v. Wash. State Bar Ass'n*, 397 P.3d 131, 146 (Wash. Ct. App. 2017). But the Washington Supreme Court has observed that "'[t]he critical factors seem to be the nature of the claim or cause of action and the nature of the parties.'" *Hayes v. City of Seattle*, 934 P.2d 1179, 1182 (Wash. 1997) (quoting Philip A. Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington*, 60 Wash. L. Rev. 805, 812-13 (1985)).

Leishman argues the subject matter of this case is distinct from his state court action: he says he sued Ogden Murphy and Pearce in state court about his "termination by Defendant AGO based on the flawed investigation prepared by Defendant Pearce," but he contends this action is about "government contract procurement fraud, the deprivation of civil rights, and subsequent attempts at concealment." Dkt. No. 154 at 20.

Leishman's argument is unconvincing. Although he includes more factual details about the Ogden Murphy Defendant's supposed wrongdoing in his federal complaint, the subject matter of Leishman's claims remains the same: Ogden Murphy and Pearce's workplace investigation. There is no getting around the fact that, at bottom, the investigation is the central issue in both actions. Nor that the nature of Leishman's claims, sounding in tort and statutory violations, are nearly identical between his two actions. *See Rains v. State,* 674 P.2d 165, 168 (Wash. 1983) (finding identity of subject where both cases alleged deprivation of constitutional rights); *see also infra* Section 3.2.2. And to the extent his causes of action differ even slightly, they were all "ripe" at the time of his previous lawsuit because the injury causing conditions had already occurred and were known to Leishman then. *Cf. Weaver v. City of Everett,* 450 P.3d 177, 185 (Wash. 2019) (declining to find identity of subject matter because the cause of action in the second suit did not exist at time of the former judgment). This is important, of course, because res judicata precludes claims that were brought or *that could have been* brought in a prior action. *Id.* at 186.

### 3.2.2.   Identity of cause of action or claims?

Whether causes of action are sufficiently identical ""cannot be determined precisely by mechanistic application of a simple test,'" but Washington courts generally consider the following criteria relevant: "(1) [W]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and

ORDER - 9

(4) whether the two suits arise out of the same transactional nucleus of facts." *Rains v. State*, 674 P.2d at 168 (quoting *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir.1982)). The relevant factors are closely related and necessarily overlap, but the last criteria is perhaps the most important. *Feminist Women's Health Ctr.*, 63 F.3d at 867–68 (analyzing *Rains*). Leishman contends that none of the *Rains* factors are met, but the Court finds otherwise.

The first element is easily satisfied: Ogden Murphy and Pearce obtained a final ruling in Leishman's state court action that they were immune from his claims, so allowing Leishman to relitigate previously extinguished claims in federal court would obviously "destroy or impair" Ogden Murphy's and Pearce's settled rights or interests.

As for the second element, Leishman would have to produce and rely on substantially the same evidence to sustain either case. Leishman argues that his latest lawsuit is based on new evidence, but this misses the point as "*some difference in the evidence between cases is not dispositive.*" *Marshall v. Thurston Cnty.*, 267 P.3d 491, 496 (Wash. Ct. App. 2011) (emphasis in original). The relevant inquiry is whether the evidence is substantially the same, not whether it is identical. *Id.* Moreover, Leishman's claim about having new or additional evidence is not the same as disclaiming substantial reliance on the same evidence as before. And there is bound to be substantial overlap in evidence given Leishman alleges the same claims of negligence, violation of the Consumer Protection Act, negligent misrepresentation, and discrimination in both actions against the Ogden Murphy Defendants.

The third and fourth factors may be analyzed together. *See Mellor v. Chamberlin,* 673 P.2d 610, 612 (1983) ("It has been said that the claim is the same if the same primary right is violated by the same wrong in both actions, or if the evidence needed to support the second action would have sustained the first action.") (citation omitted). Both cases arise from Ogden Murphy and Pearce's investigation—this is the undeniable, factual predicate for the Ogden Murphy Defendants' involvement in Leishman's employment dispute and the jumping off point for his claims against them. Leishman tries to avoid this conclusion by arguing that he's proceeding against the Ogden Murphy Defendants under a new case theory, but the harms he alleges are substantially the same and "intimately related in time, origin, and motivation" to the harms alleged in his state court action because "they arise out of the same interactions" between Leishman and the Ogden Murphy Defendants. *Hadley v. Cowan*, 804 P.2d 1271, 1276 (Wash. Ct. App. 1991). And as noted earlier, the claims he alleges are nearly identical in both suits. In other words, although the legal window dressing might be different, the cases have the same factual nucleus and a common grievance. *Feminist Women's Health Ctr.*, 63 F.3d at 868 (pursuing different legal remedies under a new legal theory in subsequent suit did not destroy identity of cause of action or claim for purposes of res judicata).

### 3.2.3. Identity and quality of parties?

The general rule is that a judgment is res judicata, and therefore binding, on all parties to the original litigation, plus all persons in privity with such parties. *Eugster*, 397 P.3d at 146. The identity-of-parties requirement does not mean

"identical" parties, but it focuses instead on whether they are "qualitatively" the same. *Rains,* 674 P.2d. at 169. When making this inquiry, courts should not place form over substance. *Id.*

Leishman, Pearce, and Ogden Murphy were all parties to the state court action. Sutherland—a "member" of Ogden Murphy—is the only newcomer. Leishman argues that her presence dooms the application of res judicata, but this goes against the weight of Washington authority holding that (1) nominally different defendants in separate suits are the same so long as they are in privity, and (2) an employer/employee relationship is one category that will suffice. *See Eugster*, 397 P.3d at 146 (analyzing res judicata and identity of parties; finding privity between employer sued in first lawsuit and employees sued in second lawsuit); *Kuhlman v. Thomas*, 897 P.2d 365, 368–69 (Wash. Ct. App. 1995) (same). As a member of Ogden Murphy, Sutherland is in privity with the firm. Suing Sutherland in her personal capacity for actions she allegedly took on behalf of the firm is a suit against the firm.

Leishman's argument that the Washington Rules of Professional Conduct somehow change the nature of her relationship with the firm are conclusory and not supported by Washington authority.

### 3.2.4.  Equitable concerns.

Leishman argues that applying res judicata to bar his second lawsuit against the Ogden Murphy Defendants would be an inequitable result. But setting aside the "many test" to determine when a prior judgment will have preclusive effect, "[i]t has been said that the claim is the same if the same primary right is violated by the

same wrong in both actions, or if the evidence needed to support the second action would have sustained the first action[.]" *Mellor*, 673 P.2d at 612 (citation omitted). Here, Leishman's Third Amended Complaint makes plain that the Ogden Murphy investigation animates his claims against the firm and its lawyers. He already litigated his claims to final judgment once—it would be inequitable to allow him to litigate his case again. Holding otherwise would endorse claim-splitting, a practice the res judicata doctrine was designed to prevent.

### 3.2.5. Res judicata bars Leishman's federal civil rights claims, too.

Leishman argues that res judicata cannot bar his federal civil rights claims against the Ogden Murphy Defendants because he did not litigate these claims in his previous state court action. Leishman is wrong.

As noted earlier, if "the prior proceeding culminated in a final judgment, a matter may not be relitigated, or even litigated for the first time, if it could have been raised, and in the exercise of reasonable diligence should have been raised, in the prior proceeding." *Kelly-Hansen v. Kelly-Hansen*, 941 P.2d 1108, 1112 (Wash. Ct. App. 1997).

Whether an afterthought or an oversight, Leishman did not sue the Ogden Murphy Defendants for federal civil rights violations; these claims should have been raised as an exercise of reasonable diligence when Leishman filed his state court action in May 2017. *Id.* at 1113–14. Consider the following: Leishman's Section 1983 claim is based on Ogden Murphy and Pearce's workplace investigation in April 2016, which he alleges deprived him of equal protection under the law based on his sexual orientation and disability status, and also deprived him of due process when

he wasn't allowed to respond to the finished investigative report; similarly, his Section 1985 claim alleges Ogden Murphy and Pearce joined a conspiracy in March 2016 to unlawfully terminate his employment. So Leishman had the facts necessary to include his Section 1983 and 1985 claims in his earlier action, but he did not, and he offers no valid reasons now for failing to bring these claims earlier.

Thus, Leishman is precluded from litigating his federal civil rights claims against the Ogden Murphy Defendants. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 651–52 (9th Cir. 1988) (holding res judicata barred plaintiff from relitigating issues that were raised or could have been raised in his state court action, including newly asserted Section 1983, 1985, and 1986 claims).

The Ogden Murphy Defendants raise other grounds to dismiss Leishman's complaint, but the Court declines to reach these other arguments since all of Leishman's claims are dismissed under the doctrine of res judicata or claim preclusion.

### 3.3. Leave to amend is futile.

Ordinarily, when a court dismisses a pro se plaintiff's complaint for failure to state a claim, it must grant leave to amend even when no request to amend is made. *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017). But leave to amend may be denied where amendment would be futile. *Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002). And district courts have "particularly broad" discretion in denying amendment when leave to amend has previously been granted. *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1117 (9th Cir.

2014) ("[T]he district court's discretion in denying amendment is 'particularly broad' when it has previously given leave to amend.").

Leishman is a licensed attorney and he has already amended his complaint several times. The court concludes that further amendment as to the Ogden Murphy Defendants would be futile because Leishman's claims against them are barred by the doctrine of res judicata.

## 4.  CONCLUSION

In sum, the Court GRANTS the Ogden Murphy Defendants' motion to dismiss and DISMISSES all of Leishman's claims against them with prejudice and without leave to amend.

Dated this 31st day of October, 2023.

_____
Jamal N. Whitehead
United States District Judge